# Wheeling.

RICHARD V. WHELAN, TRUSTEE, *et al. vs.* JOHN REILLY *et al.*

July Term, 1872.

A will contains among other things the following:

"*Twelfthly.* All the estate of every kind which shall at any time come or belong to the trustees by virtue of this will, or anything done in pursuance of the same, and which is not otherwise disposed of in this will, shall constitute a residuary fund; all moneys being part thereof shall be kept invested from time to time, as may be found advantageous, in bonds of the State of Virginia, of which the trustees shall receive the income.

"*Thirteenthly.* The income of the said residuary fund, until the death of the last survivor of my three children, William, Philip and Mary Jane, shall also be, from time to time, invested by the trustees in bonds of the State of Virginia, and become part of the principle of the said residuary fund, unless the trustees shall think proper to apply any part of such last mentioned income (which they are hereby authorized to do) to the support and maintainance of any or all of my said three last named children or their families, or to the education of any of their children or other descendants; but such application shall be made only according to the uncontrolled discretion of the trustees.

"*Fourteenthly.* After the death of the last survivor of my three children, William, Philip, and Mary Jane, the said residuary fund shall be held in trust for the children and other descendants then living of my said three last named children, or such of them as may have a descendant then living, and all such descendants shall have equal shares as among themselves, without regard to any differences in degrees of relationship or descent.

* * * * * * * * * * * *

"*Nineteenthly.* Notwithstanding anything hereinbefore contained, I desire to confer on the trustees power to encourage my three children, William, Philip, and Mary Jane, to conduct themselves well through life, and with that view do hereby authorize the trustees, whenever and as often as they shall think the same is deserved by the good conduct of my said last named three children, or either of them, to advance and give to them, or either of them, any part or parts of the said residuary fund, whether principal or interest in money or otherwise, without being accountable for the same to any person whomsoever; the power hereby given to dispose of the said residuary fund to or among my said three last named children, or any or either of them, being limited and controlled only by the discretion and judgment of the trustees."

On a suit brought to obtain one-third of the residuary fund, *i. e.* the share of William, who died before the testator, by Philip and Mary Jane, and another son of the testator, against the trustees, it is HELD:

I. When the language of a testator is plain and his meaning clear, the courts have nothing to do but to carry out the will of the testator, if not inconsistent with some rule of law.

II. All the interest which William, Philip and Mary Jane could have in the residuary fund, is dependent upon the uncontrolled discretion of the trustees, and is therefore a contingent interest.

III. As William had no vested interest in the fund, if he had survived the testator, he had no interest that lapsed by his death, and the bill should have been dismissed.

·Bill filed in the circuit court of Ohio county, at February rules, 1870.   Decree for plaintiffs John Reilly and others, at December term 1870.

The defendants appealed to this court.

The points arising in the case, in the construction of certain clauses in the will of Philip Reilly, deceased, are stated in the opinion of Maxwell, J.

*Wheat & Forbes* and *Lamb & Paull* for the appellants.

*C. W. B. Allison* for appellees.

This case was a bill in chancery to set aside the trusts created by the last will of Philip Reilly, deceased.   The questions for the consideration of the court arise upon the face of the will.

For the appellees it is claimed that the trusts created by the will are illegal and void, upon three grounds :

1. Because it creates a body of trustees with perpetual succession, upon whom it casts the legal title to the property devised.

2. Because the trusts created by the will are void for indefiniteness and uncertainty.

3. Because it creates a perpetuity, and ties up the property from alienation and use, for a longer period than the law permits.

1. The title to real estate can only be transferred in the manner prescribed by the laws of this State.

In this State, lands can only be conveyed by deed or by will, executed in the manner prescribed by law.

This will creates a board of trustees, and authorizes them to appoint their successors, and vests the title in the trustees and their successors so appointed.

It attempts to pass the title of the present trustees to the persons appointed by them, without any deed or will executed according to law.   This, of course, cannot be done.   The will,

therefore, does not vest in the present trustees an estate of inheritance. It is not to them and their heirs, but to them and their successors.

This does not come within the meaning of section 8 chapter 116 of the Code, which prescribes that a deed or will without words of limitation shall pass a fee simple, because that section provides that it shall have that effect, "unless a contrary intention appears." Here a contrary intention does appear. It was clearly the intention of the devisor *not* to create an estate of inheritance. It is an attempt to create a corporation by will, without any lawful power or authority to do so.

"If land be granted to twenty persons for the purposes of religion or learning, there is no legal way of conveying the property to any other persons for the same purposes, but by endless conveyances from one to the other, as the hands are changed." 1 Blackstone Com., 468.

"If a grant of land should be made to twenty individuals, not incorporated, the right to the land cannot be assured to their successors, without the inconvenience of making frequent and numerous conveyances." Angel and Ames on Corp., § 11.

"When an estate is devised to certain trustees and their successors, the limitation to the successors is void." *Miles* vs. *Fisher*, 10 Ohio Rep., 1.

This was an action of ejectment, and the original trustees being still alive, it was held that they took a life estate in the legal title.

What would be the effect in equity, the court declined to say.

Where a deed was made to the "church-wardens of the parish of Fairfax," and the church-wardens of parishes had not been made corporations by the legislature of Virginia, it was held—"the present deed did not operate by way of grant to convey a fee to the church-wardens and their successors, for their successors, as such, could not take, nor to the church-wardens, in their natural capacity for 'heirs,' is not in the deed." *Terrett et al.* vs. *Taylor*, 9 Cranch., 53. *Mason* vs. *Muncaster et al.*, 9 Wheaton, 455.

In the last case, in 9 Wheaton, 455, the court say this point

was settled in *Terrett* vs. *Taylor*, and is no longer open for discussion.

A devise to "the school commissioners of South Farnham school district, Essex county, and their successors, for the schooling of poor children of that district, is void." *Janey* vs. *Latane*, 4 Leigh, 327.

"A deed to one and his successors, or to one and his successors and assigns, is a life estate only, though coupled with a power to sell." 1 Washburn on Real Property, p. 71, § 53; *Sedgwick* vs. *Lafflin*, 10 Allen, 430.

There can be no doubt, therefore, but that the utmost that can be claimed for this will, is that it vests in the trustees the legal title for their joint lives, and the life of the survivor of them. The provision authorizing the two surviving trustees to appoint a successor to the one whose office is vacated, is void, because they have only a life estate to convey.

The question then arises, what effect does this failure of the purposes contemplated by the testator, have upon the title of the trustees in a court of equity? They take no beneficial interest in the property devised to them. They merely hold the naked legal title for the uses and trusts specified in the will.

The scheme of distribution prescribed by the testator in his will, is frustrated by the want of power in the trustees to perpetuate their own body, and transfer the legal title and the trusts to their successors. It is manifest that the testator did not contemplate the complete execution of the trusts during the life-time of the trustees named in the will.

It is well settled that when the testator's scheme of distribution is essentially changed or frustrated, the will is void and the property descends to the heir at law. 1 Redfield, on Wills, p. 428–30 § 10. *Leake* vs. *Robinson*, 2 Merivale, 363 to 390. *Jee* vs. *Audley*, 1 Cox, 324, 2 Redfield, on Wills, 842, § 11. 1 Jarman, on Wills, 196.

But whether this devise to the trustees is void or not, during the life-time of the present trustees, the court should declare their extent in this cause, to govern the parties after the death of the trustees. Two of them are upwards of seventy years old, and the estate they have must soon be terminated. Unless the effect of their death is declared now, another suit must be instituted to settle it after their death.

2. The trusts are void for indefiniteness and uncertainty.

Upon this question there is a conflict of authority that can-. not be reconciled.

All that can be done is to endeavor to extract from the multitude of decided cases, such principles as will when applied to the case at bar, settle and control it.

It is settled that every paper propounded as a will must be the *will* of the supposed testator:

No man can delegate to another the power to make his will, either by power of attorney executed in his life-time, or by last will and testament to be executed after his death. Because the paper executed by the attorney, agent, executor or trustee, is the *will* of the attorney, agent, executor and trustee, and not the *will* of the principal or testator. This was settled in the case of the *Bishop of Denham* vs. *Maurice,* 9 Vesey, 398, and 10 Vesey, 522.

In this case the testator devised all her property to the Bishop of Denham to pay her debts and legacies, and dispose of the residue to such objects of benevolence and charity as he should most approve of. It was held that the trusts were too uncertain and that the residue after the payment of debts and legacies descended to the next kin. This case was affirmed and the same doctrine decided in *Ellis* vs. *Selley,* 7 Simons, 552; 10 Eng. Chy. Rep., 92; and again in the same case, 1 Mylen & Craig, 28; 13 Eng. Chy. Rep., 399. See, also, *Vesey* vs. *Janson,* 1 Simon & Stuart, 69; 1 Eng. Chy. Rep., 89; *Faenlee* vs. *Garlike,* 1 Russell & Mylen, 233; 5 Eng. Chy. Rep., 233; *Ommanway* vs. *Butcher,* 1 Turner & Russell, 260; 11 Eng. Chy. Rep., 144; 5 Soeva Rep., 124.

The question as to what discretion may be left to the executor or trustee, as to the persons to whom the trust fund is to be paid, or how much is to be paid to each, is the matter about which there is distressing conflict of authority. "Courts of equity carry trusts into effect only when they are of a certain and definite character. If, therefore, a trust be clearly created in a party, but the terms by which it is executed are so vague and indefinite that courts of equity cannot clearly ascertained either its objects or the persons who are to take then the trust will be held entirely to fail, and the property will fall into the general funds of the author of the trust."

2 Story Eq., sec. 979 (a); 2 Redfield, 781. In the case of *Stubbs* vs. *Sargon,* 2 Keene, 255, 15 Eng. Chy. 255, it was held that a devise in trust for such of the orphans and nieces of the testator as S. S. should appoint, was held void for uncertainty. That the objects of the testator's bounty were not ascertained with sufficient certainty. Another devise in the same will gave to S. S. a note for two thousand pounds sterling for his own use and benefit, for the express purpose of enabling her to give to either branch of the family any portion of it, that she might think proper. This was also held void for uncertainty, and the two thousand pounds sterling went to the executor for distribution to the next of kin.

A devise " to my brother, Arthur Benson, to enable him to assist such of the children of my deceased brother Francis, as he may consider most deserving," was held void for uncertainty. *Benson* vs. *Whittan,* 5 Simons, 22; 6 Eng. Chy. Rep., 300.

A devise by the testator to his mother, " in the fullest confidence that after her decease she will devise the property to my family," was held void for uncertainty. *Wright* vs. *Atkins,* 1 Turner & Russell, 143; 11 Eng. Chy., 83. From this case it appears the case of *Wright* vs. *Atkins,* 17 Vesey, 255. and 19 Vesey, 299, were reversed by the House of Lords.

When the testator gave all his effects, real and personal, "to Charles Bardwell, his heirs, executors, administrators and assigns, to and for his and their use and benefit, well knowing that he would discharge the trust reposed in him by remembering his (the testator's) sons and daughters, William, Edmund, Martha, Eliza and Maria," it was held that the trusts were void for uncertainty, and that Charles Bardwell took the estate in fee-simple. *Bardwell* vs. *Bardwell,* 9 Simons, 320; 16 Eng. Chy. Rep., 320. See, also, *Knight* vs. *Knight.* 3 Beavan, 148; *Gibler* vs. *Runesey,* 2 O. & B., 294; Hill on Trustees Margin, 114, Top 172, Same, 116–175; *Knight* vs. *Yarborough,* Gilmer, 27, 4, Randolph, 566; *Lechmen* vs. *Lanie,* 2 Milm & Reeve, 197: 7 7 Eng. Chy. Rep., 329.

It must be borne in mind in examining English cases, that they establish a much more liberal rule in relation to indefinite trusts and charities, than the Virginia courts. *Gallago's Ext's* vs. *The Attorney General,* 3 Leigh, 450; *Senborn* vs. *Sen-*

46

*born*, 15 Grattan, 423; *The Baptist Association* vs. *Hart*, 4 Wheaton, 1.

"A devise to the son or daughter of A. B. is void for uncertainty if A. B. have more than one son or daughter." Redfield, 684. See, also, *Green* vs. *Dennis*, 2 Conn., 292; *Jackson* vs. *Cory*, 8 Johnson, 385; *Wildman* vs. *The City of Baltimore*, 8 Maryland, 551; *Fountain* vs. *Pannell*, 19 Howard, 369, *Kelly* vs. *Kelly*, 25 Penn. St., 460.

When property was devised to trustees in trust, "for such purposes as they considered promises to be most beneficial to the town and trade of Alexandria, were held void for uncertainty." *Wheeler* vs. *Smith*, 9 Howard, 76, 18; Curtis Cond., 34.

The rule laid down in Connecticut, Pennsylvania and Tennessee, is commendable for its clearness and certainty. It is this: "That the trust must be so certain that the court can control the exercise of the discretion of the trustee, and it must be capable of ascertainment what proportion each beneficiary is to take." *Gilbert* vs. *Chapin*, 19 Conn., 342; *Harper* vs. *Phelps*, 21 Conn., 247; *Pennock's Estate*, 20 Penn. St. Rep., 268; *Thomas* vs. *McKissock*, 3 Humph., 631; 2 Redfield on Wills, 779, 782. Some of the authorities we have referred to are supposed to be inapplicable, because the trusts are created by words of advice or recommendation, usually called "pecatory" words. But this cannot be sustained, as the same certainty is required to create a trust by pecatory words as by direct words, declaring a trust in positive and unequivocal terms. *Cary* vs. *Cary*, 2 Scho. and Lefray, 189; *Harrison* vs. *Harrison*, 2 Grattan, 1; *Stubbs* vs. *Sargon*, 2 Keene, 255; 15 Eng. Chancery, 255.

A doubt may arise whether the pecatory words used in a will impose any legal obligations on the party to whom they are addressed, or confer upon the beneficiary named in them any rights which a court of equity will recognize and enforce. If they are merely advisory, and not designed by the testator to create a trust for the beneficiaries named, they will not be enforced by a court of equity. The case of *Meredith* vs. *Hemage*, 2 Simons, 543, is a case of this kind. But this has nothing to do with the element of uncertainty arising from vagueness in the description of the persons of the beneficiaries, or the amount they are to receive.

Apply the rule laid down in the cases referred to from Connecticut, Pennsylvania and Tennessee to this will, and it cannot stand for a moment. It provides that the "nett proceeds or profits (of the property devised), or so much of such proceeds or profits as the trustees may think proper, shall be applied to the support of the said John and his family; or such of them as the trustees may think proper, in such sums, in such manner, and at such times as the trustees may think proper." [See fifth clause of the will, printed record, p. 25.]

How can John or any member of his family enforce this trust? Which of them can claim anything, and how much can they claim? It all rests in the uncontrolled discretion of the trustees, which of them shall have anything, and if anything, how much?

The rule laid down in *Galligo's Executors* vs. *The Attorney General*, 3 Leigh, 540, and affirmed in 15 Grattan, *Senborn* vs. *Senborn*, is equally fatal to the trusts contained in the will.

Judge Tucker says in that case, at page 465: "There is no principle supposed to be more perfectly settled, in reference to conveyances, than that every deed must have sufficient certainty as to the grantee who is to take under it. If there be such uncertainty as to the grantee, that it cannot be known distinctly who is to take by the grant, it is *ipso facto* void for that uncertainty.     *     *     *     *     *     For in the eye of the law, the intervention of a trustee does not remove a single difficulty. There is not more necessity for a properly defined grantee in a deed than for a *cestui que trust*, capable of taking, and so defined and pointed out that the trust will not be void for uncertainty. In short, there cannot be a trust without a *cestui que trust*, and if it cannot be ascertained who is the *cestui que trust*, it is the same if there was none."

Apply this rule to the case at bar. What would be said of a deed to "John and his descendants and his family, or such of them as he should think proper. And for so much of the premises granted as they should see proper." To be "occupied, used and enjoyed at such times and in such manner as Smith and Jones should think proper."

No lawyer would think for a moment of attempting to sus-

tain such a deed in any court. And yet it is the very case at bar if you strike out the trustee.

In the case of *Robinson* vs. *Allen*, 11 Grattan, 785, where the testatrix devised to her husband her farm and the property upon it, and at his death, "I give all the land and other property on the premises to one or more of the children of Caroline A. Robinson, as he may designate; or otherwise should it be necessary for him to make such other disposition of the same as he may think proper, having full confidence in him that he will do what is right." The testator's husband died before she did. The plaintiffs were the heirs-at-law of the testator, and the defendants were the children of Caroline Robinson. It was held by the court that the devise to the children of Caroline Robinson was void for uncertainty.

A greater latitude will be allowed in the description of the objects of the trust when there is a naked power vested in the trustee, than when there is a trust connected with the power. The case at bar is a trust, and not a mere power. 2 Grattan, 1, *Harrison* vs. *Harrison;* Hill on Trustees, 67.

A devise to a man and his "family" is void for uncertainty. *Falsom* vs. *Falsom*, 10 Gill & Johnson, 159; 2 Story Eq. Jur., § 1,065, (b) Lewin Trustees, 79, 2; 2 Redfield, 394–5. See, also, extract of *Henry* vs. *Hancock*, 4 Dow, 145.

2. The devises are void, because they create a perpetuity beyond the period authorized by law. 4th Kent and Coms. 183; 2 Washburn on R. P. 653 and 6.

In the year 1776—ninety-three years ago—the first Legislature of the State, after she was emancipated from the British crown, a law was passed which was intended to cut up perpetuities and entailed estates by the roots.

That policy has been adhered to from that day to the present "without variableness or the shadow of turning." Sec. 9, chap. 116 of the Code of 1860, p. 559, provides, that "every estate in lands so limited that as the law was on the 7th of October, A. D. 1776, such estate would have been an estate tail, shall be deemed an estate in fee-simple."

The courts have maintained this law in all its integrity and fullness. All shifts and contrivances to enact it have been disregarded and trampled under foot.

All trusts, uses, executory devises, springing uses, the rule

in Shelby case, and whatever else may have been resorted to for the purpose of creating perpetuities beyond the period prescribed by this statute, have been disregarded.

The law was elaborately discussed and settled in the case of *Carter* vs. *Tyler*, 1 Call; *Hall* vs. *Burrows*, 3 Call. 297 and *Tate* vs. *Tally*, 3 Call 307. These early cases have ever since been regarded as settling the law, and have been recognized and affirmed in the cases of *Sydnor* vs. *Sydnor*, 2 Munsf., 263; *Goodrich* vs. *Hending*, 3 Randolph 280; *Bell* vs. *Gillispie*, 5 Randolph 273; *Parker and Wife* vs. *Wasby*, 9 Grattan, 646; *Moore* vs. *Brooks*, 12 Grattan, 135; *Nixon* vs. *Rose*, 12 Grattan, 424, and *Tuesby* vs. *Jones*, 13 Grattan, 289.

The 14th clause of this will, printed record, p. 29, provides: "After the death of the last survivor of my three children, William, Philip and Mary Jane, the said residuary fund shall be held in trust for the children and other descendants then living of any of said three last named children, or such of them as may have a decendant then living, and all such descendants shall have equal shares among themselves, without regard to any difference in degree of relationship."

It will be seen that the trusts here provided for is not to commence until after the death of the last survivor of the three children named. And *after that*, it is to be held in trust for their children and other descendants *then* living.

The last survivor of his children may live one hundred years after the death of the testator, and their children or descendants then living may live one hundred years longer. So that the property devised in this clause may be held in trust for two hundred years.

In *Goodrich* vs. *Harding*, 3 Randolph, 380, the testator devised his lands to his son Thaddeus Goodrich, "to him and his heirs forever, with this restriction, if, in case he should die without heirs, the lands above mentioned to descend to my son William Goodrich." Thaddeus died without children' and William entered upon the land under the will."

The plaintiffs were the children of a deceased daughter of the testator.

It was held by the court that Thaddeus took an estate tail under the will, which was converted into a fee-simple by the law of 1776, and the plaintiffs had judgment.

The case of *Hill* vs. *Burrows*, 3 Call, 297, is almost identical in the facts and the principle decided.

In the case of *Nixon* vs. *Rose*, 12 Grattan, 425, the testator devised her slaves to her daughter " E," a married woman, or her heirs, for her sole, separate use, and in the event of the death of " E," without heirs of her body, then all the slaves and their increase to "R."

Held, that " E" took an absolute title to the slaves, and that the limitation deed was void for remoteness. Here, it will be observed, there was a trustee, but this made no difference.

A gift of income to be applied to keeping the tombs of the testator and his family in order, is void as creating a perpetuity. 2. Redfield on wills, p. 851.

The case of *Haldman* vs. *Haldman*, 40 Pennsylvania St. Rep., 29, is very analagous in its facts and identical in principle with the case at bar. In that case it was held, that : "Whenever in a devise of a remainder to the child or children of the first taker, it clearly appears that the words are used in the sense of " issue," or " heirs of the body" they are to be treated as words of limitation describing lineal succession to an entail and not as words of purchase in their usual sense."

The will in that case directed the executor's to account for and pay over to his three daughters during their natual lives, the income and profit arising out of their share of the residue, and after the death of them, then to descend and go to the child, and if children share and share alike. It was held that the " daughters took an estate tail in the residue of the testator's estate, which under the act of April 27, 1855, becomes an estate in fee-simple."

There can be no question or controversy about the words " children " and " descendants" in the testator's will in this case, being used in the sense of "issue of the body," and must therefore be taken as words limitation and not of purchase. And if so the limitation over is void and the first takers have a fee-simple by the express terms of the acts oi 1776 and 1785.

If we are right in supposing the case comes within the provisions of the laws against entails, this is, of course, an

end of the case. But, if the court should differ with us in this, then we maintain that the trusts created by this will are in violation of the well-settled equity rule against perpetuities. The well-settled rule on that subject is: "That when the estate possibly may not take effect within the term of a life or lives in being at the death of the testator and twenty-one years (adding in case of a child then in *ventre sa mere*, the usual fraction of a year), afterwards is void as too remote and tending to create a perpetuity," and "that in such case the limitation over being void for remoteness, the estate vests absolutely in the first taker." 2 Redfield on Wills, p. 657. See 30 and cases there cited.

It will not be controverted but this is the true rule.

And it must be borne in mind that the limitation over must certainly cease and determie at the expiration of twenty-one years after the termination of a life in being at the death of the testator.

If by any legal possibility it may extend a year or a day beyond that time the limitation over is void. There can, therefore, be no question about the law. The only difficulty is in the application of it to the case at bar.

The fifth, sixth and seventh clauses of this will are alike, and must have the same construction.

After describing the property in each clause they provide that until the death of (the son named) and thereafter until one of his children shall have attained the age of twenty-one years, the same shall be held leased, &c." So far they are within the rule. But it is further provided that "thereafter the same land shall be held in trust for the children heretofore and hereafter born in fee simple. But if the children die before attaining the said age (21), then upon the death of the last survivor of said children and (their father) if any such children have a descendent, the same land shall be held in trust for the descendants of said (John) in fee simple in such shares as if they inherited the same from him according the present law of descents in Virginia.

Upon this, one thing is clear, and beyond controversy. The "trust" is extended beyond the time authorized by law. When he had given it to trustees for the life of his sons, and until one of their children arrived at twenty-one years of age,

his power over it ceased and ended. "Thereafter" he had no power or control over it, and could not continue the trust for the children heretofore and hereafter born, either in fee simple or in any other way.

If he can perpetuate the trust, he can also perpetuate or direct the case for which the trustee shall hold.

If the legal title remains in the trustees, and an equitable fee simple vests in the testators descendants after the expiration of the life in being and twenty-one years thereafter *it is by virtue of the will.* If the will had stopped at the "thereafter" and what follows had been omitted, the legal and equitable title would both have been vested in the heirs at law of the testator, at the expiration of twenty-one years from the death of the son who was living at the death of the testator.

The attempt to withhold the legal title from them beyond that period indefinitely, is in violation of the rule against perpetuities, and therefore void.

But it is said that the will vests in the descendants of his sons a fee simple which is what they would have had by law if there had been no provision on the subject.

If this were so, it would not relieve the case of the difficulty.

If they derive their title from the will, it is because the testator had power to fix the interest they should have, and he might have given them a less estate as well as a fee simple.

If they acquire their title by descent as heirs at law of the testator, it is because the testator had no power to give it to them by will, and because this provision of the will is void for want of power in the testator to make it.

But if the will is sustained, they do not get the estate they would have had if the testator had not perpetuated the trust beyond the time authorized by law.

Under the will they take only an equitable estate in fee simple.

As heirs at law, they would have taken an unincumbered legal and equitable estate.

As owner of the equity, they cannot sell or dispose of the legal estate.

They cannot recover the possession of it by an action of ejectment.

It is no answer to this to say that the trustees have only a naked dry trust, that we can get the legal title by a lawsuit. The fact still remains that the estate is encumbered by a trust which creates a perpetuity, and is not authorized by law.

But the will does not give the same estate as the parties would have taken as heirs at law.

It gives the same estate as the parties would have inherited " according to the present law of descents of Virginia."

Before these trusts that would have been valid if they had stood alone expire, the law of descents of Virginia may be radically and essentially changed.

These parties are entitled to the benefit of all the improvements and modifications that may be made in the law of descents, before their title accrues.

If the testator can place the estate beyond the control of future legislation as to the law of descents, he might have adopted any other law of descents as well as the present law of Virginia. Why may he not with equal propriety adopt the law of descents of Pennsylvania or Ohio, as the law by which this estate shall be governed as well as the present law of Virginia? Why may he not adopt the law of Virginia on the first day of October, 1776, as the rule by which this estate shall hereafter descend and be held?

If this is a trust not within § 9, chapter 116, of the code, may not the Legislature to-morrow, with great propriety, so modify this section as to bring such cases within its provisions?

And certainly no testator has power, by will, to control the legislative power of the State, as to the property devised by his will. It is clear, therefore, that it is not merely the trust, the naked legal title, that is to be held in perpetuity, but the equitable and beneficial estate which is to vest in the descendants of the testator's children is not the same estate they would have inherited if the trusts had ceased at the time fixed by the equitable rule against perpetuities.

In the case of *Fosdick* vs. *Fosdick*, 6 Allen, 31, the testator directed that certain funds should be "placed at interest on
47

good and sufficient security, in order that said fund or estate may accumulate until my youngest grandchild may, if living, attain the age of twenty-one years. Then said trustees are directed to pay over annually to my grandchildren, in equal shares, all the annual interest and income of said trust fund or estate."

It was held that this created a perpetuity, and was therefore void. And it was further held that inasmuch as this provision for accumulation was an essential part of the testator's scheme for the distribution of this fund, the will, or the part of it creating the trust, was void, and the trust fund went to the next of kin.

In the case of *Jackson* vs. *Bellinger*, 18 Johnson, 368, the testator, after devising his property to his son John, provided, 'but if my son John may happen to die unmarried or without lawful issue, then it is my will and pleasure that the said estate shall descend to my next kin of the name of Herkimer, and that he may not sell or exchange or dispose of any part of said estate, without the consent, approbation or concurrence of my executors." It was held that the limitation over was void because it created a perpetuity, and John took a fee simple.

A devise in trust to accumulate for the period of twenty-eight years after the testator's death, and then to vest in such child or children as may be then living is void, because it creates a perpetuity. *Palmer* vs. *Halford*, 4 Russell, 403, 4 Eng. Chy. Rep., 403.

In the case of *Eyre* vs. *Marsden*, 2 Keene, 564, 15 Eng. Chy., 564, it was held that when the testator directed the "surplus of the annual income of certain funds to be applied in accumulation of the capital of his property, for the benefit of his grandchildren," which was to be divided after the death of his then children, and thirty years elapsed between the death of the testator and the death of the survivor of his then children; that the devise was void under the Thelluson act

This subject is very fully discussed, and the authorities collected, in 1 Jarman on Wills, p. 230 to 30, and 2 Redfield on Wills, chap. 17, p. 835 to 851.

Where the testator devised all his lands to his brother, if his brother should survive him, but if his brother "should

die without a lawful heir, it should then be equally divided between his brother W. A., and his nephew R. A.," it was held that the limitation over was void for remoteness, and that it descended to the heir at law of the testator. *Allen* vs. *Parham,* 5 Munford, 457.

Where the testatrix devised the residue of her estate to her four sisters for life, and on their deaths "the interest of their respective shares should, at the discretion of her executors, be applied to their maintenance and education, or accumulated for the benefit of the children of each of them so dying, until such children should respectively arrive at the age of twenty-one years, when they were to be entitled to the mother's share of the principal." It was held that the limitatation over to the children was void for remoteness. *Vounclay* vs. *Giddess,* 1 Russell & Mylne, 203; 5 Eng. Chy. Rep., 204.

Where the testatrix devised the dividends upon stocks to her children for life, at their death to their children for life, and after their death to the heirs at law of the testator, it was held that the limitations over after the death of her children were all void for remoteness, and that the property descended to the heirs at law of the testatrix. *Hays* vs. *Hays,* 4 Russell, 311, Eng. Chy. Rep., 311.

Where the testator gave the sum of five hundred pounds stock "to S. T., to receive the interest during her life, and then to her issue, and in case of her death without issue, the said five hundred pounds stock to be divided between her father's children by his second wife, and in default of children by his second wife living at the testator's death." It was held that the limitations over were all void for remoteness, and that S. T., the first devisee, took an absolute estate in the stock. *Attorney General* vs. *Bright,* 2 Keene, 57, 15 Eng. Chy. Rep., 57.

Where the testator gave the dividends of his stock to his brother and three sisters, and after the decease of either, leaving children, the share of the party dying to such children for their lives with survivorship, and if either of his sisters or brother should die without issue, the survivor or survivors to take the dividends. After the decease of the survivor of the children of his brother and sisters, the stock and interest to be distributed according to the statute of dis-

tributions. It was held that the limitations over after the death of his brother and sisters were all void for remoteness, and that the stock went to the next of kin of the testator living at his death. *Cooke* vs. *Boenler*, 2 Keene, 54, 15 Eng. Chy. Rep., 53.

There is a perfect wilderness of authorities upon the question, which might be referred to, but they will be found in the references contained in the elementary works to which we have referred, and therefore we forbear to make any further reference to decided cases.

It will be seen by reference to the eighteenth item or clause of this will, printed record, p. 29, that the residuary clause of this will is still more objectionable than the clauses already referred to.

In that, there is no attempt to restrain or limit the trust to twenty-one years, after the death of the last survivor of his children, but the will provides that after their death, the fund shall be "held in trust for the children and other descendants then living," without any limitation as to the time which it shall be so held. And they are to hold *per capita* and not *per stirpes*, the beneficial interest in said fund.

Upon no rule of construction can it be held that this trust shall cease and determine before the death of the *cestui que trusts.*

And as it does not commence until the death of the last survivor of his three children, it can only last twenty-one years.

But it creates a trust for the life of the *cestui que trusts*, which may be fifty or one hundred years.

And it must be borne in mind that the rule is that the trust *must* terminate at the expiration of twenty-one years from the termination of the life, in being at the death of the testator. The possibility that it may extend beyond twenty-one years beyond the life or lives in being, is fatal to the trust.

It is no answer to this to say that the *cestui que trusts* may compel a surrender of the fund by a proceeding in chancery.

The fund is stocks or capital invested at interest in some form.

The very object of the trusts is to place the fund beyond

the control of the *cestui que trusts*. They are only entitled to the interest or dividends. The leading object of the testator was to place his property in a position where it could not be squandered by the improvidence of his descendants, and give them a maintenance and support from the interest and profits. This object would be entirely defeated by a judgment or a decree of court, compelling the trustees to surrender the fund to the *cestui que trusts*.

We know of no principle, therefore, upon which the trustees could be required to surrender the stock or capital to the *cestui que trusts*.

No nearer approach to a perpetuity can be made through the medium of a trust, or will be supported by a court of equity, than can be made by legal conveyances of legal estates or interests, or will be admitted in a court of law. 2 Story's Eq. § 974, note 2 ; 2 Redfield, 851 ; Lewin on Trusts, 132 ; Gallego's case, 3 Leigh, 450 ; *Nachville* vs. *Attorney General*, 6 Har. and John 1 ; 2 Washburn. 457.

The trust, by reason of such uncertainty, is inconsistent with the policy of this State, subjecting such estates to the debts of the *cestui que trusts*. Code, 500, § 15.

William Reilly, one of the devisees and legatees, having died without issue, before the testator, his interest in the residuum clearly lapsed. *Frazier* vs. *Frazier's Ex.*, 2 Leigh, 642 ; 3 Lomax Digest, 113.

If property be not effectually disposed of by will, it passes to the heirs at law and next of kin, by the operation of the statute of descents and the statutes of distributions *then* in force. *Robinson* vs. *Allen*, 11 Gratt, 787.

We claim that the trusts should be declared void for the foregoing as well as the other reasons stated in the complainants' bill.

MAXWELL, J. The appellees claim one-third of the residuary fund of the estate of Philip Reilly, deceased, on the ground of the death of William Reilly, one of the supposed residuary legatees in the life-time of the testator Philip Reilly.

There is no controversy as to what the residuary fund is.

The clauses of the will on which the controversy turns are the twelfth, thirteenth, fourteenth and nineteenth, as follows :.

"*Twelfthly.* All the estate of every kind, which shall at any time come or belong to the trustees by virtue of this will, or any thing done in pursuance of the same, and which is not otherwise disposed of in this will, shall constitute a residuary fund. All moneys being part thereof shall be kept invested from time to time as may be found advantageous, in bonds of the State of Virginia, of which the trustees shall receive the income.

"*Thirteenthly.* The income of the said residuary fund, until the death of the last survivor of my three children, William, Philip and Mary Jane, shall also be, from time to time, invested by the trustees in bonds of the State of Virginia, and become part of the principal of the said residuary fund, unless the trustees shall think proper to apply any part of such last mentioned income (which they are hereby authorized to do) to the support and maintenance of any or all of my said three last named children, or their families, or to the education of any of their children or other descendants; but such application shall be made only according to the uncontrolled discretion of the trustees.

"*Fourteenthly.* After the death of the last survivor of my three children, William, Philip and Mary Jane, the said residuary fund shall be held in trust for the children and other descendants then living of my said three last named children or such of them as may have a descendant then living, and all such descendants shall have equal shares as among themselves, without regard to any differences in degrees of relationship or descent."

\* \* \* \* \* \* \* \* \* \* \*

"*Nineteenthly.* Notwithstanding anything hereinbefore contained, I desire to confer on the trustees power to encourage my three children, William, Philip and Mary Jane, to conduct themselves well through life, and with that view do hereby authorize the trustees, whenever and as often as they shall think the same is deserved by the good conduct of my said last named three children, or either of them, to advance and give to them, or either of them, any part or parts of the

residuary fund, whether principal or interest, in money or otherwise, without being accountable for the same to any person whomsoever; the power hereby given to dispose of the said residuary fund to or among my said three last named children, or any or either of them, being limited and controlled only by the discretion and judgment of the trustees."

By the fourteenth clause of the will, after the death of the last survivor of the testator's three children, William, Philip and Mary Jane, the said residuary fund is to be held in trust for the children and other descendants then living of the said three last named children or such of them as may have a descendant then living.

The language of this clause is too plain to admit of any doubt as to the intention of the testator. *Whelan and others* vs. *Reilly and others*, 3 W. Va., 597.

It is claimed that by the nineteenth clause a trust interest in the residuary fund is vested in the testator's two children, Philip and Mary Jane, and that a trust interest to the extent of one-third of the residuary fund would have vested in the said William if he had survived the testator, which interest by reason of the death of the said William in the lifetime of the testator has lapsed.

When the language of a testator is plain and his meaning clear, the courts have nothing to do but to carry out the will of the testator if not inconsistent with some rule of law.

By no construction of the language used in the nineteenth clause of the will can it be held that the testator intended to give to the said William, Philip or Mary Jane, or to either of them, any vested interest in the said residuary fund, or in fact any interest in said fund.

By the fourteenth clause there is an absolute disposition of the residuary fund in trust for the children and other descendants of the said William, Philip and Mary Jane, living at the time of the death of the last survivor of the said persons.

All the interest which the said William, Philip and Mary Jane could have in the residuary fund is dependent on the uncontrolled discretion of the trustees, and is therefore a contingent interest.

As the said William would have had no vested interest in any portion of the said residuary fund if he had survived the testator, he had no interest in the said fund to lapse by his death.

The decree complained of will have to be reversed and the bill dismissed.

The other judges concurred.

DECREE REVERSED.