EMILY M. HEINEMANN *et al. vs.* JAMES F. D'WOLF *et al.*

PROVIDENCE—JUNE 5, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Wills.  Exercise of Power of Appointment.*

A. by will devised his estate in trust for the benefit of his four daughters, B., C., D., and E., and provided: (1) "If either of my daughters shall die leaving no children or issue of a deceased child, then the portion which by said will would go to such daughter's children or issue of her child, if living, shall go to her sisters then surviving and the issue then living of any of her sisters then deceased, share and share alike, to each sister, and the issue of a deceased sister taking its parent's share; to them severally for their own use forever."

(2) "I direct that if either of my daughters shall die, leaving children her surviving, or leaving a child and issue of a deceased child her surviving, such daughter is empowered hereby to divide into such shares or portions the whole or any part of my estate which by said will and former codicil would go to her children, and to appoint the same to and among such children and issue or any of them in such proportion, equal or unequal, as she shall deem fit."

D. died, without issue, January 2, 1898.  B. died May 28, 1899, leaving her surviving, her husband F. and three children, and leaving a will providing: "For the purpose of executing the power which is vested in me under the will of my father (A) I bequeath the estate which I am authorized by said will to appoint, to my children who may be living at the time of my death and the issue of any of my children who then may be deceased, such issue taking the share which their parent would have taken, if living, in equal shares and portions."

F. was the residuary legatee and devisee:—

*Held*, that, upon the death of D., one-fourth of the estate of A. was discharged of the trust and vested absolutely in the three surviving daughters, B., C., and E.

*Held*, further, that the power of appointment in the second clause of the will of A. was limited to such portions of the estate as would pass under the first clause to the children of a deceased daughter who should survive her.

*Held*, further, that, by the will of B., she restricted herself to the power of appointment contained in the will of A., and did not attempt to dispose of her own estate, but only of that covered by the power.

*Held*, further, that the interest which vested in B. at the death of D. did not pass under the will of B. to her children, but did pass to her husband under the residuary clause.

BILL IN EQUITY.  Heard on construction of a will.

TILLINGHAST, J. The real estate described in this bill of complaint having been sold by the commissioner who was appointed for that purpose, the same is now before the court for the purpose of determining as to the ownership of one-twelfth part of the proceeds of the sale, in accordance with a decree heretofore entered in the case. This one-twelfth part is claimed by the respondent James D'Wolf Perry, to whom, after the death of Mrs. Perry, her husband, Raymond H. Perry, by deed dated September 13, 1900, conveyed to his brother, said James D'Wolf Perry, " all his interest in the estate of his late wife, Ellen M. Perry, deceased, under and by virtue of her will, or otherwise, whether real or personal, and of whatever kind and nature," in trust for certain purposes mentioned in said deed. And he, said James D'Wolf Perry, claims that said one-twelfth passed to Raymond H. Perry, under the residuary clause of Mrs. Perry's will, and now belongs to him by virtue of said conveyance.

This one-twelfth part of the proceeds of the sale of said real estate is also claimed by the Fidelity Insurance, Trust & Safe Deposit Company, of the city of Philadelphia, as trustee for the children of Mrs. Perry, the contention in their behalf being that it did not pass under the residuary clause of Mrs. Perry's will and hence was not included in said conveyance.

The title to this one-twelfth part of said proceeds, therefore, depends upon the construction which shall be put upon the fourth clause of the will of said Ellen M. Perry. And the specific question raised may be stated thus: Does the fourth paragraph of the will of Ellen M. Perry include and dispose of the one-twelfth interest of the real estate of her father, Charles H. Dabney, of, which she became seized in fee simple on the death of her sister, Frances Elizabeth Rhett, without issue?

Charles H. Dabney died December 15th, 1879, leaving a last will and testament, which was duly admitted to probate in Philadelphia, Pa., on August 6, 1880, and was also filed and recorded in Bristol, R. I., on March 10th, 1900. By said will he left the bulk of his estate in trust for the benefit of his wife, Ellen Maria Dabney, for life; and after her, in trust for the benefit of his four daughters, namely: Ellen Maria D'Wolf,

wife of James F. D'Wolf, Jr., of Bristol (and who, after the death of said James, married Raymond H. Perry); Emily M. Heinemann, Frances Elizabeth Dabney (who afterwards married Julius Rhett,) and Mary F. Payson.

So far as the question at issue is concerned, the material parts of Mr. Dabney's will are contained in the first and second codicils thereto, which read as follows:

1.   "If either of my daughters shall die leaving no children or issue of a deceased child, then and in every such case it is my will that the portion which by said will would go to such daughter's children or issue of her child, if living, shall go to her sisters then surviving, and the issue then living of any of her sisters then deceased, share and share alike, to each sister, and the issue of a deceased sister taking its parent's share; to them severally for their own use forever.

2.   "It is my will and I order and direct that if either of my daughters shall die, leaving children her surviving, or leaving a child and issue of a deceased child, her surviving, such daughter is empowered hereby to divide into such shares or portions, the whole or any part of my estate, which by said will and former codicil would go to her children, and to give, grant, devise, bequeath or appoint the same to and among such children and issue or any of them in such proportion, ratio or shares, equal or unequal, as she shall deem fit."

Mrs. Dabney died a number of years ago.   Mrs. Rhett died without issue on January 2nd, 1898, whereby the one-fourth of the estate held in trust for her under her father's will vested in her three surviving sisters, namely—Mrs. Perry, Mrs. Heinemann, and Mrs. Payson—one-third in each, that is, one twelfth of the whole estate, in fee simple.

Mrs. Perry (formerly Mrs. D'Wolf) died May 28, 1899, leaving surviving her, her second husband, Raymond H. Perry, and three children by her first husband, and leaving a will dated July 20, 1898, which was duly admitted to probate.   The fourth paragraph of this will, in so far as it is material to the question raised, reads as follows:

"For the purpose of executing the power which is vested in me under the will and codicil of my father, Charles H. Dabney,

I give, devise and bequeath the estate which I am authorized by said will and codicil to appoint, to my children who may be living at the time of my death and the issue of any of my children who then may be deceased, such issue taking the share which their parent would have taken if living, in equal shares and portions, but it is my will that the estate thus appointed shall be held by the said Fidelity Insurance, Trust & Safe Deposit Company, of the city of Philadelphia,—In trust," etc.

On the part of said trust company, representing the children of Mrs. Ellen M. Perry, it is contended that by the fourth clause of her will she intended to pass all her interest in said estate to them, and not leave it to pass to her husband as a part of her general residuary estate. And it is argued that the language of said clause appropriately expresses this intention and is apt and sufficient to include said one-twelfth of the estate. This contention is based mainly upon the claim that Mrs. Perry took this one-twelfth part under the first codicil of her father's will, and by the second codicil was given power to dispose thereof by appointment, among her children or issue, only.

(1)   We are unable to assent to this contention. Under the first codicil of Mr. Dabney's will the share of any daughter dying without issue passed to her sisters then surviving, and the issue of any deceased sister equally—the issue of a deceased sister taking its parent's share—"*to them severally for their own use forever.*"

Upon the death of Mrs. Rhett, therefore, one-fourth of her father's estate was discharged of the trust created by his will, and vested absolutely in the three surviving daughters, namely, Mrs. Heinemann, Mrs. Payson, and Mrs. Perry, each taking one-third of the one-fourth, or one-twelfth of the whole. And this part of said estate being vested in Mrs. Perry, in fee simple, of course she could dispose of it by will or otherwise, as she saw fit.

As showing that the one-twelfth in question does not belong to the children of Mrs. Perry, it is to be observed that the property covered by the first codicil of Mr. Dabney's will was not to go to the children of a surviving sister, but only to the children of a deceased sister. And at the time of the death of

Mrs. Rhett, Mrs. Perry was a surviving, and not a deceased, sister. It is also to be observed that the power of appointment conferred by Mr. Dabney under the second codicil of his will is limited to such portions of his estate as would pass under the first codicil to the children of a deceased daughter who should survive her. Upon the death of Mrs. Rhett without issue, therefore, it would seem to be clear that her surviving sisters, and not their children, were entitled to, and became the absolute owners of, the one-fourth part of the estate which she took under her father's will.

Moreover, as pertinently argued by counsel for Mr. James D'Wolf Perry, "If Mr. Dabney intended that the power given by his second codicil should in any way limit the absolute estate which might vest in Mrs. Perry, then the limitation was void as being repugnant to the absolute gift. But the clearly expressed intention of Mr. Dabney was to empower his daughters to appoint the shares their children should take in that part of his estate which went to such children under his will; leaving his daughters free to do what they wished with their own estate."

It appearing, then, that the interest in question passed to Mrs. Perry absolutely on the death of her sister, Mrs. Rhett, we come now to consider the question hereinbefore suggested, namely, whether she disposed of said interest by the fourth clause of her will. We think this question must be answered in the negative. In this clause the testator uses the expression, "the estate which I am authorized by said will and codicil to appoint." She thereby clearly restricted herself to the power of appointment contained in her father's will. The language used plainly shows that this was the only thing she had in mind; that she was not attempting to dispose of her own estate, but only of that which was covered by the power. And to hold that anything outside of the exercise of the power was intended to be accomplished by said clause would be to force the language used beyond its natural meaning. The term "appoint," particularly, shows that the testator did not intend to dispose of her own property, as this term is never used to convey one's absolute estate.

The use of the word "power" also shows that she did not intend to include her own estate held by her in fee; as a power, when given by will, contemplates not an estate in one's self, but simply the authority to give title thereto. And in the absence of anything to show an intention to the contrary, it is to be presumed that the testatrix used the words referred to in their strict legal sense and meaning. *Chapin* v. *Hill*, 1 R. I. 446; *Bailey* v. *Brown*, 19 R. I. 669.

We not only fail to find anything in Mrs. Perry's will to indicate that the technical words referred to were not used in their strict legal sense, but, on the contrary, the language used by her in the fifth paragraph, in which she refers to the fourth paragraph as disposing of that estate "over which I have a power of appointment under the will of my father," shows that she well understood and clearly appreciated the distinction between her own property and that over which she had, and was exercising, the power of appointment.

In this connection it is pertinent to observe that when she executed her will, on July 20th, 1898, her sister, Mrs. Rhett, had been dead for more than six months. And it must be presumed that she knew and well understood at that time that she had an absolute estate in one-twelfth of the property included in the trust created by her father's will. And the fact that she failed to use any language in said fourth clause which would be apt and pertinent to convey any estate excepting that to which she specifically refers shows that she did not intend to include any of her own estate therein. And of course the law is "that by the simple exercise of a power, the donee will pass only the interest of the person creating it, and not any interest or franchise of his own." 1 Sug. on Powers, 293. For "a power of appointment," as well defined by Jessel, M. R., in *Freme* v. *Clement*, 18 L. R. (Ch. Div.) 504, "is a power of disposition given to a person over property not his own, by some one who directs the mode in which that power shall be exercised by a particular instrument." And where the donee of a power makes a disposition of the subject-matter thereof in express execution of the power, as in the case under the clause now under consideration, such disposition, in the

absence of anything in the context showing a contrary intention, should be restricted to an execution of the power so as not to affect the donee's individual estate. 22 Am. & Eng. Ency. L. 2nd ed. 1115; *Moore* v. *Humpton*, 1 Whart. (Pa.) 433; *Beardsley* v. *Hotchkiss*, 96 N. Y. 212.

We think the intention of the testatrix, by the fourth clause of her will, to exercise the power of appointment only, and not to dispose of any of her own absolute estate, is so apparent and clear as not to be fairly susceptible of any other interpretation. And hence, under the well-settled rule in relation to the execution of powers (see *Blagge* v. *Miles*, 1 Story 426; *Cotting* v. *De Sartiges*, 17 R. I. 668; *Mason* v. *Wheeler*, 19 R. I. 21), the interest in question did not pass to said trust company, but did pass to her husband under the residuary clause of her will.

We therefore decide that said one-twelfth interest now belongs to the respondent James D'Wolf Perry, by virtue of the deed of conveyance to him from Raymond H. Perry, dated September 13, 1900, hereinbefore referred to.

*James Tillinghast*, for complainants.

*William R. Tillinghast and Norris & Hoffman*, for respondents.