# CHARLESTON.

OSENTON, *Executor*, v. ELLIOTT *et al.*

Submitted January 13, 1914.   Decided January 20, 1914.

1. WILLS—*Bequest—Construction—Legatee.*

   A testator bequeathed money as follows:

   ''in equal proportion to the Trustees; or other proper authorities of the following Religious Denominations—viz, 'Greenbrier Presbytery'. (Southern Assembly,) M. E. Church ('South') Hopewell Missionary Baptist Association, and to the Protestant Episcopal Church.' Diocese of West Virginia, and to be applied by the proper authorities of said Religious Denominations; as in their judgment, will accomplish the greatest good; for the true advancement. of Christianity.''

   *Held*, in the light of evidence of the facts and circumstances surrounding the testator at the time of his making the will, that wherein the provision refers to 'the Trustees * * * of the * * * M. E. Church, South,' the testator intended The Board of Trustees of the Methodist Episcopal Church, South, a corporation under the laws of Tennessee.  (p. 521).

2. WILLS—*Identity of Legatee—Extrinsic Evidence.*

   Extrinsic evidence of the facts and circumstances surrounding a testator at the time of making his will is admissible to identfy a legatee or devisee not precisely named or described in the will.  (p. 521).

3. CHARITIES—*Indefiniteness.*

   A bequest of charities to a corporation, the purpose of which as expressed in the will is within the objects and purposes of the legatee corporation, can not be said to be invalid for indefiniteness.  (p. 525).

4. CORPORATIONS—*Bequest for Benefit of Religious Denomination—Right to Take.*

   A bequest of money by a testator in this State to a foreign corporation capable of taking, for the general benefit of a religious denomination, is not invalid under our laws and policy.  (p. 525).

   (POFFENBARGER, JUDGE, dissenting.)

Appeal from Circuit Court, Fayette County.

Suit by C. W. Osenton, executor, etc., against T. H. Elliott and others.  Decree for plaintiff, and defendant The Board of Trustees of the M. E. Church, South, appeals.

*Reversed and Decree Here.*

*Dillon & Nuckolls,* for appellant.

*Maynard F. Stiles* and *L. E. Poteet,* for appellee.

ROBINSON, JUDGE:

The suit in which we have this appeal is one brought by the executor of the last will and testament of William H. Hill, deceased, for a construction of the will. The final decree in the cause denies to the appellant, The Board of Trustees of the Methodist Episcopal Church, South, a corporation, the right to take as a legatee under that part of the will which we now copy here just as it appears in the record:

"Seventh: I will and direct my said Executor, and his successor; to continue the collection of the royalties accruing on my said interest in the 'Open Fork', of Bell Creek, above mentioned—till a fund sufficient, has fully accrued, to carry out; and fully pay off; all of the cash bequest hereinabove enumerated.; then.; after a full consumation said cash provissions I further will; and direct that all of my estate both personal; and real, be sold, for cash; or good and solvent securities, and the entire fund accruing therefrom, to be applied, in equal proportion to the Trustees; or other proper authorities of the following Religious Denominations—viz, 'Greenbrier Presbytery'. (Southern Assembly,) M. E. Church ('South') Hopewell Missionary Baptist Association, and to the Protestant Episcopal Church.' Diocese of West Virginia, and to be applied by the proper authorities of said Religious Denominations; as in their judgment, will accomplish the greatest good; for the true advancement. of Christianity.

I constitute and appoint C. W. Osenton as the Executor of this my last Will and his successors to be appointed by the Circuit Court of Fayette Co W. Va with proper bond; for carrying out all the provisions. of this my last Will; and testament."

The will was written wholly by the testator. It will be observed that the document is badly punctuated. The proper punctuation, however, may readily be supplied. No question in the case arises on this score.

Testator was an unmarried man of considerable means, without relatives nearer than first cousins and descendants of such. It seems that there had been no intimate relation

between him and any of these relatives. The will contains no devise or bequest to any of them, though it contains devises and bequests to friends of the testator and to former slaves of his father. It is unnecessary, however, for us to state any of the provisions of the will other than those contained in the part which we have exhibited in full. Upon that part alone arises the only question with which we are to deal.

It appears that the testator, though not always a man of pious trend, was interested in the work of the Methodist Episcopal Church, South, gave liberally to local causes of that denomination, frequently attended its services, and was especially solicitous as to its financial welfare.

That the paragraph of the will in question, if valid as to any of the bequests sought to be made thereby, works an equitable conversion of the real estate into money, will not be seriously controverted by anyone. In what we shall say, therefore, we shall view the will as one giving to appellant, if anything, a bequest of money, and not a devise of land.

That the testator had in mind trustees or authorities of denominations and not of local societies or congregations is clear from his use of the term "denominations", as well as from the descriptions of a presbytery, an association, and a diocese, in the other bequests which are coupled with the one in question, but which have concededly failed for indefiniteness. It is plain that the testator was endeavoring to bestow on larger fields of the denominations which he named than on mere local churches. So when he mentions the "M. E. Church, South," he is intending to give not for the benefit of any local society of the Methodist Episcopal Church, South, but for the benefit of the denomination at large. For some reason he covered in his will a larger field for this denomination than for the others he mentioned. In making his will he was looking toward that denomination as a whole, to no sub-division of it. The will discloses that he knew that one denomination named by him had presbyteries, another associations, and another dioceses; and from this it is reasonable to assume that he knew that the Methodist Episcopal Church, South, had conferences. Yet with this knowledge, he selects the latter denomination as a whole, not a conference thereof, and undertakes to give for its benefit as a whole. Let us mark that he

does not undertake to will to the denomination itself. He unmistakably evinces an intention to give to a body capable of taking for its benefit. And so it is as to each of the sub-divisions of the other denominations which he mentions. The parol evidence introduced to prove the facts and circumstances surrounding the testator at the time he made the will, shows that he knew that the Methodist Episcopal Church, South, had a body known as The Board of Trustees of the Methodist Episcopal Church, South, for the purpose of taking bequests such as the one he sought to make. He had taken the advice of the presiding elder of the Methodist Episcopal Church, South, in charge of the district where the testator resided, as to the proper way to make his will so as to vest something for the use and benefit of that denomination. He told the presiding elder that he wanted to do something handsome for the church, and sought to know from the presiding elder to whom he should make his will in that regard. That ministerial official told him that he should make it to "The Board of Trustees of the Methodist Episcopal Church, South." This was six weeks or two months before the date of the will. The extrinsic evidence of such facts and circumstances may be looked to for aid in construing the will. "It is recognized by the great weight of authority that evidence of the facts and circumstances, existing at the time of the execution of the will, and known to testator, with reference to which he drew the instrument of which the meaning is in question, is necessary, not to contradict the meaning of the will, but to enable the court to place itself in his situation, to see things as he saw them, and to apply his language as he understood and intended it." Page on Wills, sec. 817. Then, surrounding the testator when he made his will was the fact that this particular denomination at large had a board of trustees for the purpose of taking bequests. Can we reasonably say that the testator did not heed the direction in regard to making his will, which he so particularly sought from one well versed in such matters? From the presiding elder he knew that the Methodist Episcopal Church, South, had trustees for the purpose of taking bequests. But evidently he was not so well informed as to the sub-divisions of the other denominations to which he also desired to will. For joining

together in one bequest all the denominations for the benefit of which he would bequeath, he says: "to the Trustees or other proper authorities" of the same. When he used the word "Trustees", taking into consideration the knowledge which the evidence shows he had obtained from the presiding elder for the very purpose of making his will, we must reasonably infer that he meant that word to apply to the bequest to the "M. E. Church, South." He used it also, as will be perceived by referring to the whole context of the paragraph of the will under consideration, so as to apply to any of the sub-divisions of the other denominations named as to which it might be applicable, and as to those to which it might not be applicable he used the words "or other proper authorities." But as to the bequest to the "M. E. Church, South," we may reasonably eliminate the words "or other proper authorities," leaving them to apply only to those of the sub-divisions of the other denominations named as to which the testator was not fully advised in the premises. Thus interpreting the will from its terms read in the light of the facts and circumstances surrounding the testator at the time of its making, the words of the bequest in controversy are, 'to the Trustees   *   *   of the   *   *   M. E. Church, South.' And we may assuredly say that courts and people generally know that the abbreviation M. E. when used in such connection is intended for Methodist Episcopal.

It is shown by the evidence that the Methodist Episcopal Church, South, has a body of trustees for the purpose of taking and holding in trust all bequests, donations, and the like, made for the benefit of the denomination at large. That body is The Board of Trustees of the Methodist Episcopal Church, South, a corporation under the laws of Tennessee. From the articles of incorporation and the by-laws of that body, in evidence, it appears sufficiently that such corporate body is the only auxiliary of the church existing for the purpose of taking and holding bequests made for the benefit of the church at large. That body was named to the testator by the presiding elder. Was the same meant by the testator when he bequeathed to 'the Trustees   *   *   of the   *   *   M. E. Church South?'

We have pointed out that the will plainly shows that the

testator meant to give for the benefit of the denomination at large. So when he used the words "the Trustees of the M. E. Church, South", clearly he meant to refer to the trustees of the denomination at large. The only trustees of the denomination at large are those incorporated as The Board of Trustees of the Methodist Episcopal Church, South—those the presiding elder named to the testator. Taking the words of the will and the facts and circumstances surrounding the testator, we are of opinion that the testator could have meant to refer to no other trustees than those which are shown to be the incorporated trustees of the Methodist Episcopal Church, South. Evidently the testator realized that he could not make a bequest generally to the denomination. He seems to have known that it was necessary to make the bequest to a body of trustees or authorities capable of taking. Because of this he sought information from one in authority in the church. Quite reasonably we may assume that in making his will he had in mind the same body of trustees that had been named to him in this behalf. He had in mind the same body that the presiding elder had in mind in answering the testator's inquiry. That the presiding elder, in naming to the testator a proper legatee for a bequest in behalf of the denomination at large, referred to The Board of Trustees of the Methodist Episcopal Church, South, a corporation under the laws of Tennessee, is we think without question. None other could have been known to that ministerial official. For a bequest in behalf of the church at large he would have named none other. We must accredit him with full knowledge of the organization, polity, and usages of his church. That the testator may not have known that the legatee he intended was a corporation is a matter of no import. Clearly he meant to give to that which is proved to be a corporation capable of taking.

The mere mistake in not giving the exact name of the legatee can not defeat the bequest. It is proper to show by extrinsic evidence, as has been done in this case, the exact name of the legatee that the testator intended. "Parol evidence of the facts and circumstances surrounding a testator is always admissible to identify a legatee or devisee not precisely described in the will." *Jordan's Admr.* v. *Richmond Home*

*for Ladies,* 106 Va. 710. "Where a bequest of money is made to a missionary society by a testatrix, designating the society by a mistaken name in her will, it may be shown by extrinsic testimony and surrounding circumstances what missionary society was intended. *Ross' Ex'r.* v. *Kiger,* 42 W. Va. 402. "When such corporations are improperly described in the will, the bequest will not fail, if it be clearly shown by proper proof what corporations were meant by the description." *University* v. *Tucker,* 31 W. Va. 621. "Where the name or description of the legatee is erroneous, and there is no reasonable doubt as to the person intended to be named or described, the mistake will not defeat the bequest." *Wilson* v. *Perry,* 29 W. Va. 197. There is little difference between 'the Trustees * * of the * * M. E. Church South' and The Board of Trustees of the Methodist Episcopal Church, South. A turning to the cases will disclose that many bequests departing much more from the true name intended have been upheld.

The purpose of the bequest named by the testator is directly within the object and purposes for which the legatee corporation was formed. The bequest is therefore not invalid on account of any indefiniteness as to the beneficiaries under the trust. "Foreign corporations may take bequests of charities under a will made in this State, when and to the extent authorized by their charters." *University* v. *Tucker,* 31 W. Va. 621. "A devise to a corporation for the general purposes of its incorporation can not be said to be uncertain in any respect, and will be upheld." *Jordan* v. *Universalist. General Convention Trustees,* 107 Va. 79. In the celebrated case of *Gallego's Executors* v. *The Attorney General,* 3 Leigh 450, Judge Tucker said: "A bequest to a corporation capable to take, is and always was valid as a charitable gift."

Nor is the bequest invalid because made to a foreign corporation for the general benefit of a religious denomination. That corporation is one authorized to take and hold such a bequest by the laws of the state of its creation. True, no such corporation can be created under the laws of this State. But there is nothing in our laws that forbids a foreign corporation from taking a bequest from a testator in this State, to be devoted to general religious purposes. Many such

bequests have been upheld. *Cornwell* v. *Mt. Morris Methodist Episcopal Church,* 80 S. E. 148. Let it be clearly understood that there is nothing in our laws or policy against the dissemination of religion or "the true advancement of Christianity." The early Virginia policy against mortmain still recognized in this State is a different thing. It prevents aggrandizement by local churches within the State and unnecessary accumulation of property by them. To this end our State issues no charters of incorporation for religious purposes, limits the amount of land that may be held by a local church, and validates no indefinite devises or bequests to churches. Yet that policy was never intended to retard the dissemination of religion. Rather it was intended to foster a religion of the heart, not one preverted by wealth and power. We by no means ignore the doctrine of Judge Tucker in the Gallego case. That case involved indefinite charities. Our law is still in accord with it. But neither the Gallego case nor our laws and policy go so far as to invalidate a definite bequest of money to a foreign corporation capable of taking, though the taking be for the general dissemination of religion.

We conclude, therefore, that the will makes a valid bequest of money to The Board of Trustees of the Methodist Episcopal Church, South, a corporation under the laws of Tennessee, to the extent of one-fourth of the proceeds of the property which the testator under the part of the will which we have recited herein directed to be converted into money. Wherein the decree adjudges otherwise the same will be reversed.

*Reversed and Rendered.*

POFFENBARGER, JUDGE, *(dissenting):*

Reading the words "Trustees or other proper authorities of * * * * M. E. Church ("South")" in connection with their context, I am unable to say the testator intended by them to designate the corporation claiming the bequest. He had in mind, not a corporation, but a religious denomination. Mark the relation and significance of the words used—"Trustees or other proper authorities of the following Religious Denominations", one of which is the M. E. Church South. The gift to the trustees of the M. E. Church, South, one of the "religious denominations", nega-

tives intent to make it to some other body, a corporation. The church is one thing and the corporation another. The former is an unincorporated voluntary association, without power to take and hold property, and a gift to which would utterly fail on the ground of indefiniteness and uncertainty, the latter a corporation, a legal entity, an artificial person, having power to take and hold property, to which a gift by will may be validly made. There is a vast difference between them in other respects, in consequence of which I am unable to adopt the majority view that the corporation may take the gift because the testator intended it for the church. The corporation does not perform the functions of the church and their respective purposes are not co-extensive. This distinction was noted and declared important in *Wilson* v. *Perry*, 29 W. Va., 169. Naming the church and not the corporation as the object of his bounty, the testator manifested intent to devote the property to its general purposes, not the limited purposes of the corporation. He expressly declared his purpose to be the accomplishment, through the Methodist Episcopal Church, South, of "the greatest good for the true advancement of Christianity". Did he intend the church to give it to the corporation for such use as it might see fit to make of it? He does not say so. On the contrary, the terms he used show he expected the church to use it for its general purposes and in such manner as it should deem best. In other words, he expected the church to be its custodian and apply it directly to such specific purposes as, in its opinion, would most effectually advance Christianity.