CARL B. GOETZ

*v.*

. OLD NATIONAL BANK OF MARTINSBURG *etc. et al.*
(No. 10673)

Submitted October 12, 1954.  Decided November 23, 1954.

*James M. Mason, 3rd, Mason & Mason, F. Dean Nichols, Clarence E. Martin, Jr., Martin & Seibert, Charles L. Nichols,* for appellant.

*L. I. Rice, Thomas W. Steptoe, Forrest A. Brown, Louis M. Denit,* for appellees.

Lovins, Judge:

This is a declaratory judgment proceeding by which Carl Goetz, a nephew of the testatrix hereinafter men-

tioned, prays for a declaratory judgment, holding the residuary clause of the will of Jennie S. Goetz invalid.

The petition names as defendants The Old National Bank of Martinsburg, a National Banking Association, The National Bank of Washington, a similar association, individually in their own proper persons and as executors of the estate of Jennie S. Goetz, deceased; Ralph Goetz, another nephew of the deceased; Ernestine Goetz in her own proper person and executrix of Harry S. Goetz, a deceased nephew of the testatrix, and F. Dean Nichols, ancillary administrator of the estate of Harry S. Goetz. Carl B. Goetz and Ralph Goetz are surviving nephews and next of kin of Jennie S. Goetz. Ernestine Goetz is the California executrix of Harry S. Goetz.

There is no dispute as to the facts. Jennie S. Goetz departed this life in Jefferson County, West Virginia, on the 10th day of February, 1953, leaving the above named nephews as the nearest next of kin. Harry S. Goetz died testate on the 23rd day of May, 1953, in the State of California. By his will he devised all of his property, real, personal and mixed, to the defendant, Ernestine Goetz, who has qualified as executrix of Harry S. Goetz's will. Copy of that will is recorded in the office of the County Clerk of Jefferson County, West Virginia. The defendant, F. Dean Nichols, was appointed ancillary administrator of the estate of Harry S. Goetz on the 5th day of January, 1954.

Jennie S. Goetz executed her will, bearing date the 26th day of April, 1951, which has been duly probated and recorded in the office of the Clerk of the County Court of Jefferson County, West Virginia.

The two defendant banks were appointed executors of the will of Jennie S. Goetz, having duly and properly qualified as such executors and are now acting as such. The executors of Jennie S. Goetz have the exclusive possession of the estate consisting of personal property. The executors have denied the claims of the petitioner,

the living nephews and the beneficiary under the will of Harry S. Goetz.

The will of Jennie S. Goetz provides for her burial and vests in the executors of her will discretion as to the kind of funeral and the amount to be paid therefor. By the second paragraph, she directs that her executors shall make provisions for the perpetual care of the family burial lot and mausoleum thereon. Full discretion is vested in the executors as to the amount to be expended by them for such purposes. The third clause of the will directs that the testatrix's funeral expenses and debts be paid. The fourth or residuary clause reads as follows: "All the rest, residue and remainder of my estate, of every kind and character, wheresoever the same may be situated, real, personal and mixed, of which I shall die seised and possessed, or to which I may in any manner be entitled, I give and bequeath unto The National Bank of Washington, a National bank having its principal place of business in the District of Columbia, and the Old National Bank of Martinsburg, a National Bank having its principal place of business in the City of Martinsburg, State of W. Va., their and each of their successors and assigns, to distribute and pay over the same unto such religious, charitable, scientific, literary, educational, or fraternal corporations and associations as they may, in their discretion select and determine, it being my request, however, that they shall select only such institutions as are located within the United States. In connection with any such corporation, organization or institution, said Executors are hereby given discretion as to the terms and conditions upon which such distribution is to be made, that is to say, whether absolutely and in fee simple, or upon conditions by them imposed."

The fifth paragraph of the testatrix's will gives the executors power to sell, convey, mortgage or lease her real estate and property if they deem it expedient and advantageous, and vests in the executors full discretion to make, execute and deliver all writings necessary and

proper to be made and executed in carrying out the transfer or mortgage of the bequeathed property. An unnumbered paragraph appointed the two executors and requested that such executors be permitted to serve without bond.

The appraisement of the property of the deceased shows that she died possessed of two automobiles, jewelry and household furniture; that she also owned certain bonds, corporate stock and cash deposited in banks. The total appraised value of all property is shown to be $1,095,444.66. The appraisement was duly accepted by the proper officers of the corporate executors.

In this proceeding, Ralph Goetz and Ernestine Goetz, in her individual and representative capacity, filed joint and separate answers, admitting the material allegations contained in the petition and praying that the will of Jennie S. Goetz be construed and the respondent's rights and claims be declared and established. F. Dean Nichols, ancillary administrator, likewise filed his answer admitting the material allegations in the petition. He also avers that his only interest in the questions presented by the petition is whether he as representative of Harry S. Goetz, deceased, is entitled to a distributive share of Jennie S. Goetz's estate.

The corporate executors filed their joint and several answers by which they admit the material allegations of the plaintiff's petition. They further admit that they hold the estate of Jennie S. Goetz as executors under her will. But they aver that the residuary clause of such will is not invalid for any of the reasons assigned in the petition, nor for any other reason. They also deny that the petitioner, Carl B. Goetz, the respondents, Ralph Goetz and Ernestine Goetz are entitled to any portion of the estate of Jennie S. Goetz.

The executors allege that unless they are otherwise directed by the Court, they will make distribution of all the residuary estate of Jennie S. Goetz's estate as directed in the fourth or residuary clause of the will, and pray that

the Court hear the proceeding upon its merits and declare and adjudicate that Carl B. Goetz, Ralph Goetz, Ernestine Goetz or the estate of Harry S. Goetz have no right or interest in the estate of Jennie S. Goetz. They pray that the Court will find and declare that the will of Jennie S. Goetz is a valid and enforceable testamentary disposition of the estate of the testatrix.

The trial court decreed adversely to the claims of the nephews of Jennie S. Goetz and the executrix of Harry Goetz, deceased nephew, and granted the prayer of the executors' answer.

From that decree, the petitioner, Carl Goetz prosecutes this appeal. In his petition to this Court, Carl Goetz sets forth the following questions: "(a) Does this clause violate the rule against perpetuities? (b) Is this clause a valid and enforceable disposition by the testatrix of her estate? (c) Does this clause create a trust and if so does it create a charitable trust or private trust? (d) Does this clause create a power of appointment in the said executors? (e) Does the doctrine of *cy pres,* as found in Chapter 35, Article 1, Section 4, and id, Article 2, Sections 1 and 2, of the Official Code of West Virginia, As amended. (Sec. 3491, 3501, 3502. Michie's Code) apply to the aforesaid clause? (f) Is the language of the fourth clause precatory in this, that the two Executors are not bound by the provisions for the distribution thereof and therefore void because it was an absolute bequest in fee simple, which the aforesaid banks have no right or power to take? (g) Do the aforesaid Executors have the right to hold the aforesaid Estate of Jennie S. Goetz in trust or are they under a duty to distribute the principal or corpus thereof?"

The petitioner, Carl Goetz, assigns as error substantially the following: (1) That the court erred in holding that the provisions of the residuary clause of the will of Jennie S. Goetz is valid, enforceable and binding upon the executors of her estate, and that such executors are authorized and required to distribute such residuary estate as directed in the residuary clause, using their discretion as to the classes and identities of the takers of the bequest described

in said clause, and likewise, using their discretion as to the terms and conditions upon which such distribution will be made, that is to say whether absolutely and in fee simple, or other conditions imposed by the executors in accord with the charitable and benevolent purposes provided by the will of Jennie S. Goetz; (2) in holding that the residuary clause of Jennie S. Goetz's will creates a valid charitable trust together with a valid religious and scientific trust; (3) in holding that the residuary clause of Jennie S. Goetz did not create a power of appointment; (4) in holding that the rule against perpetuities does not apply to the power of appointment provided in the will of Jennie S. Goetz, and that such rule against perpetuities is not violated by the provision of the fourth or residuary clause; (5) in holding that certain language in the residuary clause relating to the location of the institutions is not precatory; (6) in holding that the executors take the property as trustees, but acting in their capacities as executors, must promptly appoint the beneficiaries and make distribution of all of the corpus and accumulated income of said residuary estate within a reasonable time, under the supervision and control of the County Court of Jefferson County; (7) in holding that Sections 1 and 2 of Article 2, and Section 4 of Article 1 of Chapter 35 of the Code, should be read and construed together; (8) in holding that the Attorney General can bring suit to enforce the trust or trusts created by the will of Jennis S. Goetz; (9) in holding that the petitioner, his living brother, Ernestine Goetz, executrix of the estate of Harry Goetz, a deceased brother, nor any of them, are entitled to have any interest in any part of the estate of Jennie S. Goetz, deceased.

We have been favored with voluminous briefs in this proceeding containing many citations, some of which serve no useful purpose.

The case at bar presents problems governed by the law of wills and the law of trusts. At common law, real estate held under certain tenures could not be devised. But by the English Statute, 32 Hen. VIII, individuals were per-

mitted to dispose of their property by will. See *McMechen* v. *McMechen*, 17 W. Va. 683, 699; *Dower* v. *Seeds*, 28 W. Va. 113, 141; *Powell* v. *Sayres*, 134 W. Va. 653, 663, 60 S. E. 2d 740; 34 Halsbury's Laws of England, 2nd Edition, page 22, et seq.; 1 Page on Wills, §22. All of the property however disposed of by the will here considered is personal property.

On account of the variant words, phrases and sentences used by testators in making testamentary disposition of property, decided will cases do not afford accurate precedents for a decision of other will cases. As was said in the opinion of this Court in *Young* v. *Lewis*, 138 W. Va. 425, 76 S. E. 2d 276, 280: "By reason of the infinite variety of words and combinations of words used in wills, precise precedents are seldom found. The paramount rule in construing or giving effect to a will is that the intention of the testator must be given effect, unless that intention violates some positive rule of law. *Hinton* v. *Milburn*, 23 W. Va. 166; *Couch* v. *Eastham*, 29 W. Va. 784, 3 S. E. 23; *Bently et al.* v. *Ash et al.*, 59 W. Va. 641, 646, 53 S. E. 636; *Behrens* v. *Baumann*, 66 W. Va. 56, 66 S. E. 5; 27 L. R. A., N. S., 1092; *Woodbridge* v. *Woodbridge*, 88 W. Va. 187, 106 S. E. 437; *Davis* v. *Davis*, 118 W. Va. 328, 190 S. E. 331; *Brookover* v. *Grimm*, 118 W. Va. 227, 190 S. E. 697; *Harris* v. *Eskridge*, 124 W. Va. 283, 20 S. E. 2d 465; *Hedrick* v. *Hedrick*, 125 W. Va. 702, 712, 25 S. E. 2d 872; *Ball* v. *Ball*, 136 W. Va. 852, 69 S. E. 2d 55. See *In Re: Conley*, 122 W. Va. 559, 12 S. E. 2d 49. In the case of *McCreery* v. *Johnston*, 90 W. Va. 80, 110 S. E. 464, the rule is stated as follows: The paramount rule in construing or giving effect to a will is that the intention of the testator must be given effect, unless that intention violates some positive rule of law or public policy. See *Cresap* v. *Cresap*, 34 W. Va. 310, 324, 12 S. E. 527, where it is stated: " '* * * the plain intent of the testator, as evinced by the language of his will, must prevail; if that intent may be carried into effect without violating some deeper principle of public policy; * * *' ".

But some general principles have been established which are applicably alike to all litigation regarding the testamentary disposition of property.

As above noted, one of those principles is that the intention of the testator is controlling if not contrary to some positive rule of law or public policy. *Young* v. *Lewis, supra; In Re: Conley, supra; Brookover* v. *Grimm, supra; Cresap* v. *Cresap, supra; Couch* v. *Eastham, supra.* See *Whelan Trustee et al.* v. *Reilly, et al.,* 5 W. Va. 356.

Courts, in construing wills, have resorted to presumption: (1) That there is presumption against intestacy; (2) there is presumption against disinherison of an heir. In the discussion following, it is unnecessary to resort to either presumption.

There is another general rule. The Courts in construing a will are not permitted to surmise or conjecture as to what the testator's intention was. *Young* v. *Lewis, supra; Wills* v. *Foltz,* 61 W. Va. 262, 56 S. E. 473, 12 L. R. A., N. S. 283; *Neal* v. *Hamilton Co.,* 70 W. Va. 250, 73 S. E. 971. But the words used by a testator are given their meaning and effect. Where a latent ambiguity exists in a testamentary paper, extrinsic evidence may be introduced to show intent. *Hobbs, Exr.* v. *Brenneman, et al.,* 94 W. Va. 320, 118 S. E. 546; *Young* v. *Lewis, supra.* Such showing is not made by this record.

A will must be executed in accordance with existing statutory provisions, otherwise, it is invalid. The execution of the will in the case at bar is not questioned, nor does any question of undue influence or mental incompetency arise in this proceeding.

Bearing in mind the foregoing general principles applicable to wills and testamentary dispositions, we now come to a discussion of the controlling principles involved in this proceeding.

The defendants contend, among other things, that the will here considered created a charitable trust. The plaintiff contends that it is possible under the provisions of the will for the executors or trustees to create a private trust or trust for profit in making disposition of the residuary estate.

A charity may have as its purpose or object "the relief of poverty; the advancement of education; the advancement of religion; the promotion of health; governmental or municipal purposes; other purposes the accomplishment of which is beneficial to the community". 2 Restatement of the Law of Trusts, §368. *Jackson* v. *Phillips & Others,* 14 Allen (Mass.) 539, 556, Annotation, 12 A. L. R. 2d 849. In *Shenandoah Valley Nat. Bank* v. *Taylor,* (Va.) 63 S. E. 2d 786, the following language is quoted: " ' "A charity," in a legal sense, may be described as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable. Generally speaking, any gift not inconsistent with existing laws which is promotive of science or tends to the education, enlightening, benefit or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience is a charity. It is essential that a charity be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity.' " See *Allaun* v. *First & Merchants Nat. Bank of Richmond,* (Va.) 56 S. E. 2d 83; *Owens* v. *Bank of Glade Spring,* (Va.) 81 S. E. 2d 565.

One requisite of a charitable trust is that the beneficiaries of the trust as distinguished from the object or purpose of the trust must be indefinite. *Shenandoah Valley Nat. Bank* v. *Taylor, supra; Hays* v. *Harris,* 73 W. Va. 17, 23, 80 S. E. 827; *Ritter* v. *Couch,* 71 W. Va. 221, 76 S. E. 342. In the case of *Hays* v. *Harris, supra,* this Court held that the term benevolent trust was more inclusive than the term charitable trust and included a charitable use or

purpose. There is some distinction to be drawn between a charitable and a benevolent trust. See *Smith* v. *Pond,* (N. J.) 107 A. 800. In *Banking & Trust Co.* v. *Showacre,* 102 W. Va. 260, 135 S. E. 9, the first point of the syllabus reads as follows: "One of the essential elements of a charitable or benevolent trust is that it be certain in its object and as to the class of persons, but indefinite as to the individuals to be benefitted." See *Gallaher* v. *Gallaher,* 106 W. Va. 588, 591, 146 S. E. 623; *Shenandoah Valley Nat. Bank* v. *Taylor, supra; In Re Small's Estate,* (Iowa) 58 N. W. 2d 477.

As to definiteness of the object and purpose of a charitable bequest, see Annotation, 163 A.L.R. 784. But, the beneficiary of a private trust must be definite. *In Re Bunn's Estate,* (Cal.) 206 P. 2d 635.

The second point of the syllabus in *Weaver* v. *Spurr,* 56 W. Va. 95, 48 S. E. 852, is too broad, as it condemns a trust for being indefinite as to purpose, as well as beneficiaries.

It is a rule of general application that charitable trusts are favored. It is so generally accepted, that we do not deem it necessary to cite any authority in support of that principle.

Before further discussing charitable trusts, we digress for the purpose of discussing the law in this jurisdiction relating to a religious trust which is sometimes treated as one class of charitable trusts. 4 Pomeroy Equity Jurisprudence, 5th Ed., §1021; *Maguire* v. *Loyd,* (Va.) 67 S. E. 2d 885.

A religious trust in this jurisdiction is limited by statutory provisions relating to the ownership of land by a church. Under Code, 35-1-8, devises of land to religious organizations, subject to the foregoing limitation, are limited to certain purposes enumerated in that statute. In the instant case, the will does not devise land.

Code, 35-1-4 deals with gifts and bequests made to churches, religious sects, societies or denominations. An

analysis of that statute shows that though the purposes and beneficiaries be insufficiently designated, they must be named. In the instant case, the testatrix did not designate or name any specific organization, but was content to describe the objects and purposes of the bequest in indefinite and generic terms.

This Court has refused to uphold bequests with more certain designation than shown in the instant case. *Wilson v. Perry,* 29 W. Va. 169, 1 S. E. 302, decided in 1886; *Pack v. Shanklin, et al.,* 43 W. Va. 304, 27 S. E. 389. See *Beatty v. Trust Co.,* 123 W. Va. 144, 13 S. E. 2d 760, decided in 1941, as to indefiniteness of object and purpose.

This Court has held, however, that though a church or religious corporation may not be incorporated under the laws of this state, if there is a foreign corporation validly and legally established under the laws of another state, a bequest made in this state is valid if such foreign corporation be named. *University v. Tucker,* 31 W. Va. 621, 8 S. E. 410; *Osenton v. Elliott,* 73 W. Va. 519, 81 S. E. 837; *P. Episcopal E. Society v. Churchman's Reps.,* 80 Va. 718, decided in 1885. See *Trustees Gen. Assem. Presbyterian Church U. S. v. Guthrie* (Va.) 10 S. E. 318, decided in 1889, for the application of the law of religious trusts to the incorporation of societies or organizations auxiliary to a church or religious organization.

It will be noted that in the *P. Episcopal E. Society v. Churchman's Reps., supra,* the court disapproved *Baptist Association v. Hart's Ex'rs.* 4 Wheaton 1, and *Gallego's Ex'ors. v. The Attorney General,* 3 Leigh, 450, 24 Am. Dec. 650, and approved *Vidal et al. v. Girard's Executors,* 2 Howard 127. In *Trustees Gen. Assem. Presbyterian Church U. S. v. Guthrie, supra, Baptist Association v. Hart's Ex'rs., supra,* was disapproved, and *Gallego's Ex'ors. v. The Attorney General, supra,* was overruled.

The doctrine of *Gallego's Ex'ors. v. The Attorney General, supra,* was reaffirmed and the dicta in the Churchman's and Guthrie cases disapproving and overruling those

decisions as above noted, were in terms disapproved in the case of *Fifield* v. *Van Wyck's Ex'r.* (Va.) 27 S. E. 446, 64 Am. St. Rep. 745. In *Jordan* v. *Universalist General Convention Trustees* (Va.) 57 S. E. 652, decided in 1907, a devise of a remainder to the trustees of the Universalist General Convention to be by them sold and the money applied to mission work in the United States was upheld as being a valid testamentary disposition mainly for the reason that a corporation of the State of South Carolina was designated.

It is observed that in the case of *Wheeler* v. *Smith et al.*, 9 Howard 55, 78, the law of Virginia as stated in *Baptist* v. *Hart's Ex'rs.*, *supra*, was reaffirmed, and the case of *Vidal et al.* v. *Girard's Executors*, *supra*, was distinguished, the *Vidal* case having been decided under the laws of Pennsylvania.

In our opinion, the decisions of this Court relative to religious trusts do not grow out of hostility to any church or religious organization, but they probably have their origin in the statutes of mortmain, as well as the undeviating purpose of the founders of our government to separate church from state. See Black's Law Dictionary, 4th Edition, page 1163.

Moreover, there are variant views as to what is and what is not religion. See *Board of Education* v. *Barnette*, 319 U. S. 624, 634, et seq., 63 S. Ct. 1178, 87 Law Ed. 1628. This Court has refrained from approving any organization or church as representing the true religion. We think this is salutary and necessary, and no expression in this opinion shall be construed as passing on such question.

The intention of the testatrix in the will here considered would not be carried out if the trustees should use the property bequeathed for purely charitable purposes and thus ignore scientific corporations or associations named in the residuary clause of the will.

Going further into the question of charitable trusts other than religious trusts, clearly it was the intention of the testatrix to create a charitable trust in part. But the

language used in attempting to do so is so general and indefinite that the executors and trustees may use part of the property in establishing a charitable trust. Likewise, such trustees, under the wide and uncontrolled discretion accorded them, may create a private trust. Therefore, the trust created by the testatrix would be "mixed". *In Re Durbrow's Estate* (N. Y.) 157 N. E. 747. The purpose of a trust and duties of a trustee must be clearly defined. *Massanetta Springs, etc. Encampment* v. *Keezell* (Va.) 171 S. E. 511.

A scientific, literary, educational or fraternal corporation may be operated for profit, as witness the many existing corporations of such classes which derive profit from their operation. Many fraternal organizations in addition to their fraternal activities, operate an insurance section which may or may not be operated for profit. Some fraternal organizations are not benevolent or charitable institutions. *Bangor* v. *Masonic Lodge* (Me.) 40 Am. Rep. 369.

In this state of the record, we think that a trust for profit as well as a charitable trust is created by the fourth clause of the will. 51 Harvard Law Review, 562. Such mixed trust cannot be sustained. 2A Bogert on Trusts, pages 81, 82; 2 Restatement of the Law, Trusts, §376; *Danville Community Hospital* v. *Thompson* (Va.) 43 S. E. 2d 882; *In Re Frasch's Will* (N. Y.) 156 N. E. 656; *In Re Shattuck's Will* (N. Y.) 86 N. E. 455; *Mason* v. *Perry* (R. I.) 48 A. 671; *City of Harrisburg* v. *Trustees of Harrisburg Academy* (Pa.) 162 A. 815. See *Trust Co. of Georgia* v. *Williams* (Ga.) 192 S. E. 913; *In Re Sutro's Estate* (Cal.) 102 P. 920.

The trust is for mixed purposes, and though the will of the testatrix be considered as partially providing for a charitable trust, there is no method of apportionment as between the charitable purposes and the scientific and other trust for profitable purposes mentioned by testatrix. *Tilden* v. *Green* (N. Y.) 28 N. E. 880; *Wheelock* v. *American Tract So.* (Mich.) 66 N. W. 955; 63 Am. St. Rep. 578; *Mitchell* v. *Reeves* (Conn.) 196 A. 785.

Code, 35-2-1 and 2 are invoked as validating this bequest. On reading those two sections together, it becomes clear that those statutes constitute an attempt to restore partially the *cy pres* doctrine in this jurisdiction. Code 35-2-1 reads as follows:

"Where any conveyance, dedication or devise of land, or transfer, gift or bequest of personal property, has been made or shall be made to trustees for the use of any university, college, academy, high school, seminary, or other institution of learning; or for the use of any benevolent, fraternal, patriotic, literary, temperance, or charitable society, order, lodge or association, or labor union or similar association or brotherhood of craftsmen or employees, or any local branch thereof, or for the use of any orphan asylum, children's home, house of refuge, hospital, or home or asylum for the aged or incurables, or the afflicted in mind or body, or for the use of any other benevolent or charitable institution, association or purpose; or if, without the intervention of trustees, such conveyance, dedication or devise of land, or transfer, gift or bequest of personal property, has been made and has not been declared void in any suit or action, or has not been treated and acted upon as void under the law heretofore existing, or shall be hereafter made for any such use or purpose, the same shall be valid and such land or property, as well as any subsequently acquired by purchase or otherwise in furtherance of such use or purpose, shall be held for such use or purpose only."

Code, 35-2-2 reads as follows:

"No conveyance, devise, dedication, gift, grant or bequest hereafter made for any of the uses set forth in the preceding section shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust annexed to such conveyance, devise, dedication, gift, grant, or bequest, or for any failure to name or appoint a trustee for the execution of the trust; but such conveyance, devise, dedication, gift, grant, or bequest shall be valid; and whenever the objects of any such trust shall be undefined, or be so uncertain as not to admit of specific enforcement, or literal execution, or no trustee shall have been named or appointed to execute the trust, or there

is no trustee or trustees in existence having authority to take the property, a suit in chancery may be instituted, by any party interested, in the circuit court of the county where the trust subject, or any part thereof is, in the case of a conveyance, dedication, gift or grant, or in which the will was probated, in the case of a devise or bequest, for the appointment or designation of a trustee or trustees to execute the trust, or for the designation of the beneficiaries in, or the objects of, any such trust, or, where such trust does not admit of specific enforcement or literal execution, for the carrying into effect as near as may be the intent and purposes of the person creating such trust; and thereupon such court shall have full power to appoint or designate a trustee or trustees to execute the trust, or to designate the beneficiaries in, or the objects of, any such trust, or where such trust does not admit of specific enforcement or literal execution, to carry into .effect as near as may be the intent and purposes of the person creating such trust."

An analysis of the two sections above quoted discloses that the application of Code, 35-2-2 rests upon the purposes and uses enumerated in Code, 35-2-1. The testatrix in the instant case included some of the uses set forth in Code, 35-2-1, but she named a scientific use or purpose in the residuary clause which is not named as a use, purpose or object in Code, 35-2-1. As stated above, Code, 35-2-2 deals only with such uses, objects and purposes as are named in Code, 35-2-1. A reading of such statutes supports the conclusion that a bequest to a scientific institution is not affected by Code, 35-2-1 and 2.

The words found in the residuary clause, "It being my request however, that they should select such institutions as are located in the United States" aids in a measure in ascertaining the organizations to which the bequest should go. But we take judicial notice of the fact that there are many such institutions located within the United States which come within the description contained in the above quoted words. Such knowledge however, does not render definite or certain the effect of the generic words describ-

ing the purposes and objects to which the bequest may be given. It is true that the quoted words are directed to the trustees, and when so directed, precatory words are considered more imperative than those directed to a beneficiary. See *Parrish* v. *Gamble* (Ala.) 174 So. 303, where it is stated that when precatory words are addressed to a personal representative only and not to a beneficiary under the will, such words are sometimes considered imperative. In the instant case, the precatory words partially describe the unnamed and undesignated beneficiaries. It is to be noted however that there is no issue here as between a named and unnamed or possible beneficiary. The cases on precatory words cited in the briefs fail to make any distinction on this point. See 3 Page on Wills, Lifetime Edition, §1179; Annotation 141 A.L.R. 346, relative to terratorial or geographical limits created by precatory words. Also see *Baker* v. *Baker*, 53 W. Va. 165, 44 S. E. 174 and *Hedrick* v. *Hedrick*, *supra*, for a discussion of the force and effect of precatory words contained in a will.

We do not think that the precatory words used by testatrix create a specific bequest. Such words are a simple direction to the trustees to designate the takers of the property if the trust is valid.

Clearly, the two banks who are designated as executors, but really have a dual capacity as executors and trustees under the language of the will, do not take any beneficial interest in the property bequeathed.

The trial court was justified in holding that the two banks should administer the estate as executors and settle their accounts as such, thus ending that phase of their duties. The direction and control of their actions and conduct as executors is within the jurisdiction of the County Court of Jefferson County, West Virginia, Constitution of West Virginia, Article VIII, Section 24; *Maguire* v. *City of Macomb* (Ill.) 127 N. E. 682. But their conduct as trustees is not before us since the trust is invalid.

In a proper case, a court will not interfere with the discretionary power vested in a trustee where there is

no showing of fraud, bad faith or abuse of discretion. But a trustee may properly seek advice from a Court of Equity as to the legality of a proposed action. *Westport Bank & Trust Co.* v. *Fable,* 13 A. 2d 862.

We are cited the case of *Baptist Association* v. *Hart's Ex'rs.*, 4 Wheaton Reports 1, 4 L.Ed. 499. In that case, the following item of a will was held invalid: " 'Item, what shall remain of my military certificates at the time of my decease, both principal and interest, I give and bequeath to *The Baptist Association, that for ordinary meets at Philadelphia annually,* which I allow to be a perpetual fund for the education of youths of the Baptist denomination, who shall appear promising for the ministry, always giving a preference to the descendants of my father's family.' " The testator died in 1795. Prior to his death, the legislature of Virginia passed an act repealing all English statutes. In 1797 the association was incorporated. The Supreme Court of the United States, by Mr. Chief Justice Marshall held that the association not being incorporated at the time of the testator's death, could not take the bequest, nor could the individuals who composed the association at the time of the death of the testator take the same, and that the legacy did not constitute a charity and hence there were no persons to whom the legacy could be decreed. It was further held that there being no legal interest vested by the bequests, the testamentary disposition being too vague to be claimed by those for whom the beneficial interest was intended, the bequests could not be established by a court of equity under its ordinary jurisdiction of enforcement. The prerogative of the King as *parens patriae* was independent of the statute of 43 Elizabeth. Subsequently, the Supreme Court in the case of *Vidal et al.* v. *Girard's Executors,* 2 Howard 127, 11 L.Ed. 205, distinguished the case of *Baptist Association* v. *Hart's Ex'rs., supra,* holding that the statute of charitable uses, Chapter 4, 43 Elizabeth, did not establish the doctrine of charitable uses as such. See *Harrington* v. *Pier* (Wis.) 76 Am. St. R. 924; *Kain* v. *Gibboney,* 101 U. S. 362, 25 L.Ed. 813.

An examination of Chapter 4, 43 Elizabeth, shows clearly that the object and purpose of that statute was to establish commissions whose duty should be to enforce charitable uses. We conclude that the equity courts of England, prior to the enactment of the statute, recognized and enforced charitable trusts and uses. Before passing from this phase of the case, we are impressed with the fact the Supreme Court of Virginia has disapproved the opinion in the case of *Baptist Association* v. *Hart's Ex'rs., supra,* and over-ruled *Gallego's Ex'ors.* v. *The Attorney General, supra,* and that later the same Court adopted the doctrine of the earlier cases as hereinbefore stated.

It is not amiss to say that after the enactment of certain statutes unnecessary to mention or discuss, the Supreme Court of Appeals of Virginia has adopted a different attitude relative to the validity and enforcement of charit-able trusts. *Owens* v. *Bank of Glade Spring, supra; Thomas* v. *Bryant* (Va.) 40 S. E. 2d 487; *Roller* v. *Shaver* (Va.) 17 S. E. 2d 419; *Moore* v. *Downham* (Va.) 184 S. E. 199; *Maguire* v. *Loyd, supra;* 3 M.J., Charitable Trusts, §4. 3 M.J., Charitable Trusts, §5, states the treatment accorded charitable trusts by this Court.

At common law, the Attorney General acting *parens patriae* on behalf of the King, could enforce a trust. *The Late Corporation of the Church of Latter-Day Saints* v. *United States,* 136 U. S. 1, 10 S.Ct. 792, 34 L.Ed 478, Annota-tion, 62 A.L.R. 883. See *Gallego's Ex'ors.* v. *The Attorney General, supra; Clark* v. *Oliver* (Va.) 22 S. E. 175. An Attorney General may invoke the powers of a Court of Equity to enforce a trust where the public has a general interest in its enforcement. *Allred* v. *Beggs* (Tex.) 84 S. W. 2d 223. See *Souhegan Nat. Bank* v. *Kenison* (N. H.) 26 A. 2d 26; Annotations 62 A.L.R. 881; 124 A.L.R. 1237. As to enforcement of Trust, see 3 Scott on Trust, §391.

Code, 5-3, as amended, provides generally for the duties of the Attorney General and his Assistants. Other statutes have been passed which impose duties upon the Attorney General and grant him authority relating to specific mat-

ters, but neither Code, 5-3, nor the other statutes relating to the special duties of the Attorney General impose upon such officer the duty to act in the enforcement of a testamentary trust, charitable or otherwise. The general and specific enumerations made by the various statutes concerning the duties of the Attorney General are silent as to the enforcement of a trust by him. We reserve our opinion however, on this question, since we have hereinabove held this trust is invalid and therefore calls for no enforcement.

The trial court held that the residuary clause of the testatrix's will did not create a power of appointment. A power of appointment "* * *is 'an authority enabling one person to dispose of the interest which is vested in another.'" *Browning* v. *Blue Grass Hardware Co.* (Va.) 149 S. E. 497, 499. A similar definition will be found in the case of Heinemann v. DeWolf (R. I.) 55 A. 707, 709, reading as follows: "For 'a power of appointment,' as well defined by Jessel, M.R., in *Freme* v. *Clement*, 18 L.R. (Ch. Div.) 504, 'is a power of disposition given to a person over property not his own, by some one who directs the mode in which that power shall be exercised by a particular instrument'". Applying the foregoing definition to the residuary clause in the instant will, such clause may be considered as a power of appointment, though invalid as a trust. Nevertheless, when so considered, such power is invalid as violating the rule against perpetuities. *Brookover* v. *Grimm, supra; McCreery* v. *Johnston, supra; Starcher* v. *Duty,* 61 W. Va. 373, 56 S. E. 524; *Prichard* v. *Prichard,* 91 W. Va. 398, 113 S. E. 256; Gray, The Rule Against Perpetuities, 4th Ed. §214; 3 Tiffany, Real Property, 3rd Ed., §712; 70 C.J.S. Perpetuities, §23, *Camden Safe Deposit & Trust Co.* v. *Scott* (N. J.) 189 A. 653, 2 Simes, Law of Future Interests, §534 et seq.

The rule against perpetuities has been defined as follows: "The rule against perpetuities is not a rule of construction but is an arbitrary, absolute and fundamental canon to prevent indefinite control by a grantor or testator over the devolution of property. * * * requires that 'every ex-

ecutory limitation, in order to be valid, shall be so limited that it must necessarily vest, if at all, within a life or lives in being, ten months and twenty-one years thereafter, the period of gestation being allowed only in those cases in which it is a factor.' " Pts. 4 and 5, syllabus, *Brookover* v. *Grimm, supra; Whelan et al.* v. *Reilly, et al.,* 3 W. Va. 597; *Smith* v. *United States Nat. Bank of Denver,* (Colo.) 207 P. 2d 1194.

The foregoing statement of the rule against perpetuities clearly applies to human beings. In the instant case, we are dealing with two executors who are artificial beings and also unidentifiable beneficiaries or ultimate takers of the property. In that situation, it may be that the element of life or lives in being and the period of gestation may not be factors in applying the rule. Nevertheless, we apply the rule against perpetuities as stated in *Brookover* v. *Grimm, supra,* giving consideration to the element of life or lives in being and the period of gestation. As so applied, the rule would prevent the vesting of the property in the ultimate beneficiaries for the reason that the trustees have an uncontrolled discretion and no time is fixed in the will for them to finally dispose of the property bequeathed by the testatrix.

The rule against perpetuities does not apply to charitable uses. *Pace* v. *Dukes* (Ga.) 55 S. E. 2d 367; *Hulet* v. *Crawfordsville Trust Co.* (Ind.) 69 N. E. 2d 823; *Miller* v. *Flowers* (Fla.) 27 So. 2d 667; *In Re Wright's Estate* (Pa.) 131 A. 188.

The trust here considered, having in mind the unlimited discretion of the trustees, may possibly be converted into a charitable as well as a noncharitable trust. The execution of such trust is barred by the rule against perpetuities. *In Re Kline's Estate,* 32 P. 2d 677.

The rule against perpetuities likewise applies to the exercise of the power of appointment as hereinabove stated.

The questions propounded by the plaintiff in this proceeding are answered as follows: The residuary clause

violates the rule against perpetuities when considered as a mixed trust, a private trust or a power of appointment. The residuary clause is not a valid and enforceable disposition of the testatrix's residuary estate. But the other bequests in the will are valid. *Hooper et al.* v. *Wood,* 97 W. Va. 1. Such clause creates a charitable trust, as well as a trust for what may be a noncharitable purpose or object. It is possible that the property would be distributed among institutions conducted for profit. If the residuary clause creates a power of appointment, the rule against perpetuities bars it. The testamentary disposition of the testatrix's property by the residuary clause is not aided by the application of Code, 35-1-4 and Code, 35-2-1 and 2.

The precatory language in the residuary clause, though imperative as being addressed to the executors of the will, is not of any importance, the request being invalid.

The executors have no beneficial interest in the residuary estate of Jennie S. Goetz in trust, but they must distribute such estate to the next of kin after payment of special legacies, the funeral expenses and cost of administration. See *Knox* v. *Knox's Exors.*, 9 W. Va. 124, 145; *Milhollen's adm'r.* v. *Rice et al.*, 13 W. Va. 510, 565; *Minot* v. *Parker*, (Mass.) 75 N. E. 149; *Wentura* v. *Kinnerk* (Mo.) 5 S. W. 2d 66.

The overall element is that the fourth clause of the will is really not the will of the testatrix, but in the last analysis, amounts to a written direction to the two executors to make a will for her. See *Read* v. *Williams* (N. Y.) 21 Am. St. R. 748.

We have examined with care the law of other jurisdictions based on judicial decisions and applicable statutes existing there, the decisions of this Court and applicable statutes of this state, and have reached the conclusion that the testatrix did not make a valid testamentary disposition of her property in so far as the will relates to the residuary estate.

Many citations in the briefs have not served to clarify the issues between the parties. An examination of many of those cases discloses variant decisions which sometimes rest on the different phrases and words in the wills considered. In some instances, a decision is controlled by existing statutes. We bear in mind the observation hereinbefore made that one will case frequently does not serve as a precedent for the decision of another, though as noted, some of the general principles of the law of wills may be enunciated.

The real basis for objection made by the plaintiff to this will is that it excluded the nephews and next of kin of the testatrix from taking any part of her estate. In view of the fact that we have held that it is invalid as a religious or charitable trust, the Circuit Court erred in excluding the next of kin.

The attempt to dispose of the property of the testatrix in the fourth or residuary clause being ineffective, the property embraced in such residuary clause reverts to the next of kin. *Knox* v. *Knox's Exors., supra; Minot* v. *Parker, supra.*

In accordance with the foregoing, the decree of the trial court is reversed. This proceeding is remanded to the Circuit Court of Jefferson County with directions to enter a declaratory judgment in accord with the principles stated in this opinion.

*Reversed and remanded,*
*with directions.*