457 S.E.2d 637 (1995)
193 W.Va. 614
CITY OF MORGANTOWN, a West Virginia municipal corporation, Plaintiff below, Appellant
v.
WEST VIRGINIA UNIVERSITY MEDICAL CORPORATION, a West Virginia Corporation, Defendant below, Appellee.
No. 22354.
Supreme Court of Appeals of West Virginia.
Submitted February 28, 1995.
Decided April 13, 1995.
*638 Gary Wigal and Phillip M. Magro, Morgantown, for appellant.
J. Robert Gwynne and Paul R. Cranston, Morgantown, for appellee.
NEELY, Chief Justice:
The City of Morgantown appeals from the 2 November 1993 order of the Circuit Court of Monongalia County ruling that the West Virginia University Medical Corporation is exempt from the City of Morgantown's Business Occupation tax as a charitable organization. For the reasons set forth below, we affirm the judgment of the circuit court.

I.
West Virginia University Medical Corporation ("WVUMC") is a private, non-profit corporation, incorporated in 1971 by physicians employed by the West Virginia University Medical School. Essentially, WVUMC is a faculty group practice organization in which members of the Faculty of the School of Medicine provide professional services to patients, and the fees are collected by the Corporation. It is not a hospital. WVUMC has never paid Federal, State, or City taxes.
On 1 February 1990, the City of Morgantown ("City") brought a declaratory judgment action in the Circuit Court of Monongalia County for re-evaluation and determination of WVUMC's tax liability under the City's Business & Occupation ("B & O") Tax. The petition alleged that the primary purpose of WVUMC is to bill patients and collect revenues resulting from services provided by its member doctors, rather than the provision of charitable health care; therefore, WVUMC should not benefit from tax-exempt status as a charitable organization.
*639 WVUMC maintains that it is a charitable and educational corporation, separate and apart from West Virginia University, organized and operated exclusively for the purpose of supporting the mission of the West Virginia University School of Medicine. Furthermore, WVUMC asserts its activities and operations have always been confined to advancing the mission of the School of Medicine. The clinical physician faculty members provide medical services and teach medical students.
The 1 July 1971 Articles of Incorporation of the West Virginia University Medical Corporation originally defined as its purpose as follows:
To enable the corporation, through its employee-physicians, to furnish medical services to patients referred to the West Virginia Medical Center for care; to collect fees for such services through a professional fees office established by the corporation; to pay the West Virginia Board of Regents from such collected fees at the Medical Center; and to disburse the balance of such fees for the benefit of the West Virginia University School of Medicine. [Emphasis added.]
In 1972, the corporate charter was amended to state, in pertinent part, that "[t]he Corporation is organized exclusively for charitable, scientific and educational purposes." Articles of Incorporation of the West Virginia University Medical Corporation, 1 November 1972.
The amended charter also added a provision stating that the Corporation shall not engage in any activity "not permitted to be carried on (a) by a corporation exempt from Federal Income Tax under section 501(c)(3) of the Internal Revenue Code...." The Corporation's Articles of Incorporation further provide that "[n]o part of the net earnings of the Corporation shall inure to the benefit of any private shareholder or individual"; accordingly, individual clinical faculty members receive no interest in the assets of the Corporation.
In 1986, thirty-four percent of WVUMC's income was used to pay physician salaries. Individual compensation is not determined by the amount of patient fees generated by the physician. The Dean of the School of Medicine and the department chairpersons determine the salary for clinical faculty members. The average salary paid to WVUMC's physician employees is below that of other clinical faculty at other medical schools, ranking in the 30th percentile by comparison.
Medical services are provided by physician members without regard to a patient's ability to pay. The record reflects that over 13 million dollars in uncompensated medical care was provided during the fiscal year 1988-89. Medical care is also provided at independent free clinics in Morgantown and Charleston.
Following cross-motions for summary judgment, on 2 November 1993 the circuit court ruled that WVUMC is a charitable organization; therefore, the Court ruled it is exempt from the City of Morgantown's Business and Occupation Tax. The primary issue on appeal is whether WVUMC is a charitable organization.

II.
The City's first assignment of error is that WVUMC should not have been found to be charitable under the repealed state B & O tax statute. There are two articles of the West Virginia Code, which read in pari materia define the limits of a municipality's power to impose its B & O tax on an organization: W.Va.Code, 11-13-1 et seq. [1989] and W.Va.Code, 8-13-5 [1993].
West Virginia Code, 11-13-1 et seq. [1989] sets forth the state business and occupation tax.[1] It is a tax levied upon for-profit organizations *640 for the privilege of doing business in West Virginia. Virginia Foods of Bluefield, Va., Inc. v. Dailey, 161 W.Va. 94, 239 S.E.2d 770 (1977). However, the statute has always contained an exemption for organizations "operated exclusively for religious or charitable purposes." W.Va.Code, 11-13-3(d) [1983].
West Virginia Code, 8-13-5 [1993] provides for the imposition of municipal B & O taxes, stating in pertinent part:
§ 8-13-5 [Municipal] Business and Occupation or privilege tax ...
(a) Authorization to impose tax.

(1) Whenever any business activity or occupation, for which the state imposed its annual business and occupation or privilege tax under article thirteen [§ 11-13-1 et seq.], chapter eleven of this code, prior to July one, one thousand nine hundred eighty-seven, is engaged in or carried on within the corporate limits of any municipality, the governing body thereof shall have plenary power and authority, unless prohibited by general law, to impose a similar business and occupation tax thereon for the use of this municipality.
* * * * * *
(d) Exemptions.A municipality shall not impose its business and occupation or privilege tax on any activity that was exempt from the state's business and occupation tax under the provisions of section three [§ 11-13-3], article thirteen of said chapter eleven, prior to July one, one thousand nine hundred eighty-seven, and determined without regard to any annual or monthly monetary exemption also specified therein. [Emphasis added.]
Accordingly, W.Va.Code, 8-13-5(d) [1993] and 11-13-3(d) [1983] clearly demonstrate the legislature's intent to exempt charitable organizations from B & O taxation at the state and municipal levels.

III.
Although the term "charitable" is critical, the West Virginia Code does not supply a definition. Therefore, we must look to our traditional rule found in Syllabus Point 2 of Smith v. W.Va. State Bd. of Educ., 170 W.Va. 593, 295 S.E.2d 680 (1982):
One of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law.
We have not previously considered the scope of the common law meaning of "charitable" as it relates to a medical faculty practice corporation. However, the general usage of the term "charitable" in W.Va.Code, 11-13-3(d) [1983], leads us to conclude that our Legislature intended to import the common law meaning into the statute.
The exemption provision of the state B & O statute is virtually identical to its federal counterpart. Section 501(c)(3) of the Internal Revenue Code of 1954 (IRC) provides that "[c]orporations ... organized and operated exclusively for religious, charitable, scientific... or educational purposes" are entitled to tax exemption. Similarly, the state exemption from B & O taxation refers to corporations "organized and operated exclusively *641 for religious or charitable purposes." W.Va.Code, 11-13-3(d) [1983].
Internal Revenue Code § 501(c)(3) also does not define "charitable"; however, related Treasury regulations have addressed this issue and it is clear that IRC policy with respect to charitable exemptions has been shaped by common law. In Revenue Ruling 71-447, 1971-2 Cum.Bull. 230, the Internal Revenue Service (IRS) formalized the policy, first announced in 1970, that § 501(c)(3) embraced the common-law "charity" concept. See also Bob Jones University v. United States, 461 U.S. 574, 585, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157, 169 (1983).
In 1891, in a restatement of the English law of charity, Lord McNaghten stated:
"`Charity' in its legal sense comprises four principal divisions: trusts for the relief of poverty; trusts for the advancement of education; trusts for the advancement of religion; and trusts for other purposes beneficial to the community, not falling under any of the preceding heads." [Emphasis added.]
Commissioners v. Pemsel, A.C. 531, 583 (1891); See e.g., 4 A. Scott, Law of Trusts § 368, 2853-2854 (3d ed. 1967). Charities have been accorded tax exempt status because they provide benefit to society.
The definition of "charitable" just cited is in keeping with prior decisions by this court. For example, in Goetz v. Old National Bank of Martinsburg, 140 W.Va. 422, 84 S.E.2d 759, 767 (1954), this Court noted, with respect to charitable trusts:
A charity may have as its purpose or object `the relief of poverty; the advancement of education; the advancement of religion; the promotion of health; governmental or municipal purposes; other purposes the accomplishment of which is beneficial to the community.` 2 Restatement of the Law of Trusts, § 368; Jackson v. Phillips, 14 Allen Mass., 539, 556; Annotation, 12 A.L.R.2d 849. [Emphasis added.]
Thus, because the federal exemption relies upon the common law meaning of "charitable", as does our state business and occupation tax, we find WVUMC's tax exempt status under Section 501(c)(3) of the Internal Revenue Code of 1954 to be dispositive of the issue of WVUMC's charitable status under W.Va.Code, 11-13-3(d) (1990). To the extent that State ex rel. Cook v. Rose, 171 W.Va. 392, 395, 299 S.E.2d 3, 6 (1982) stating: "[a] designation as a nonprofit corporation by the IRS does not in and of itself result in a property tax exemption similarly being granted to the organization" implies otherwise, it is overruled.
It is uncontroverted that WVUMC's federal 503(c)(3) tax-exempt status was made by the Internal Revenue Service in June, 1973. More recently, in 1983, the IRS audited WVUMC, again concluding that WVUMC is a tax-exempt organization under federal law. Furthermore, in 1977, the West Virginia Tax Department explicitly referred to the importance of the federal exemption in construing the state exemption:
A ruling has been requested as to the application of the business and occupation tax to gross income earned by public and private nonprofit hospitals.

It is the opinion of this Department that all nonprofit hospitals which have qualified as exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code of 1954 are likewise exempt from the West Virginia business and occupation tax as corporations, associations or societies organized and operated exclusively for charitable purposes as provided in West Virginia Code Chapter 11, Article 13, Section 3(d). [Emphasis added.]
Memorandum Ruling Decision, No. 77-4, (30 August 1977), West Virginia Tax Reporter (CCH) [Transfer Binder-Business and Occupation Tax as in Effect Prior to 1 July 1987] Paragraph 65-219.40. Generally, construction of a tax statute by the administrative taxing authority is entitled to great weight, although it is not binding on the courts.
Although WVUMC is not a hospital, it has been organized and operated for charitable purposes in such a way that it maintains a tax exempt status under federal law. We see no reason why a non-profit medical faculty practice corporation that: (1) enhances educational opportunity for students at the West *642 Virginia Medical School; (2) facilitates medical research; (3) provides medical care irrespective of ability to pay; (4) reasonably supplements clinical faculty salaries facilitating recruitment and retention of top physician faculty members; (5) operates to benefit the West Virginia University medical school; and, (6) is exempt from federal tax, under 26 U.S.C. § 501(c)(3) as a charitable, education and scientific organization should not qualify for charitable exemption from the state business and occupation tax.
The City points to the fact that WVUMC bills patients for medical care as evidence that it is not exclusively operated as a charitable institution. However, this fact alone is not dispositive. In Syl. Pt. 5, of Reynolds Memorial Hospital v. Marshall County Court, 78 W.Va. 685, 90 S.E. 238 (1916), we held:
"A hospital `not used or leased out for profit', but which devotes all of the proceeds arising therefrom to its maintenance and support, and deficits caused by expenses in excess of receipts are paid by voluntary contributions, and no profit is sought or received by its owners, is property used for `charitable purposes', and may be exempted from taxation under section 1 of article 10 of the Constitution of this state, notwithstanding such hospital is not used exclusively for free patients, but its rules and regulations require payment of such of its patients as are able to pay, according to their circumstances and the accommodations they receive, and that no person has individually a right to demand admission, but all are admitted under certain reasonable rules and regulations. [Emphasis added.]
Accord, Syl. Pt. 1, State ex rel. Cook v. Rose, 171 W.Va. 392, 299 S.E.2d 3 (1982). Applying that standard, the determinative issue is whether the hospital refuses admittance to patients who cannot pay.
In this case, WVUMC provides medical care irrespective of ability to pay. Furthermore, the record reflects that WVUMC provided over $13 million in uncompensated medical care during 1988-89 alone. Medical care is also provided at independent free clinics in Morgantown and Charleston. Therefore, we find that the circuit court properly ruled that WVUMC is organized and operated exclusively for charitable purposes under federal and state law. Accordingly, WVUMC is entitled to exemption from the City of Morgantown's local B & O tax pursuant to § 735.28(d) (1988) of the City Code.

IV.
We shall briefly address the City's final assignment of error. The City asserts that the circuit court erroneously granted the appellee's motion for summary judgment. As previously indicated, this case was decided on cross-motions for summary judgment. Therefore, we must look to the West Virginia Rules of Civil Procedure, Rule 56 concerning summary judgment for guidance on this issue.[2] In Painter v. Peavy, 192 W.Va. 189, 192, 451 S.E.2d 755, 758 (1994), we stated that a circuit court's entry of summary judgment, under West Virginia Rules of Civil Procedure 56(c), is to be granted by a trial court only when the moving party shows there is no genuine issue as to any material fact and that, further, it is entitled to judgment as a matter of law.
The applicable standard for granting a motion for summary judgment has been determined by this Court as follows:

*643 "`A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, Andrick v. Town of Buckhannon, 187 W.Va. 706, 421 S.E.2d 247 (1992).
Accord, Syl. Pt. 2, Painter, supra.
Whereas, we are bound to draw any permissible inference from the pleadings, depositions, and the facts, in a light most favorable to the non-moving party, Renner v. Asli, M.D., 167 W.Va. 532, 534, 280 S.E.2d 240, 242 (1981), reh'g denied (1981), the non-moving party still must produce evidence sufficient for a reasonable jury to find in its favor. Painter v. Peavy, at 193, 451 S.E.2d at 759, supra (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986)).
In note 5 of Painter, we pointed out that when a motion for summary judgment "is properly documented with such clarity as to leave no room for controversy, the nonmoving party must take the initiative and by affirmative evidence demonstrate that a genuine issue of fact exists. Otherwise, Rule 56 empowers the trial court to grant the motion. Hanks v. Beckley Newspapers Corp., 153 W.Va. 834, 172 S.E.2d 816 (1970)." Accordingly, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 4, Painter, supra.
The City argues that WVUMC is not a charitable, scientific, or educational institution such that tax exempt status is warranted. Whereas WVUMC filed an affidavit in support of its motion for summary judgment that was also supported by the record[3], the City relied upon the conclusions, impressions and contentions of counsel as the factual basis to support its motion for summary judgment. Under WVRCP, Rule 56(e), a party is not entitled to resist a motion for summary judgment by relying only upon the pleadings. Crain v. Lightner, 178 W.Va. 765, 768, 364 S.E.2d 778, 781 (1987). Furthermore, "`[s]ummary judgment cannot be defeated on the basis of factual assertions contained in the brief of the party opposing a motion for such judgment.' Syl. pt. 3, Guthrie v. Northwestern Mutual Life Insurance Co., 158 W.Va. 1, 208 S.E.2d 60 (1974)." Syl. pt. 6, McCullough Oil, Inc. v. Rezek, 176 W.Va. 638, 346 S.E.2d 788 (1986).
Thus, the City's mere assertion at the hearing on summary judgment that WVUMC is not a charitable organization is simply not enough to defeat a ruling in favor of WVUMC. The sworn statement of Robert Graff, WVUMC's CEO must be viewed as uncontroverted for the purposes of deciding whether summary judgment was properly decided. Mr. Graff stated:
[W]hile most patients are billed for the medical care furnished by WVUMC, WVUMC's policy is to provide medical care regardless of the financial circumstances of the patient. A patient's inability to pay does not affect the nature of care rendered. During the 1988-89 fiscal year alone, WVUMC rendered $13,000,000.00 in uncompensated patient care.
Graff Aff., para. 8, ex. C, Mem. in Supp. of Def.'s Mot. for Summ.J. (27 April 1990).
Moreover, Mr. Graff's statement supporting WVUMC's "open door" policy towards indigent patients was affirmed the by deposition testimony and interrogatories of WVUMC's faculty, corporate, and clinical *644 witnesses.[4] In order to arrive at a result in the City's favor, we would need to ignore the common law meaning of "charitable" as it has been applied by both Federal and State law, as well as the West Virginia Rules of Civil Procedure.
For the above stated reasons, the judgment of the Circuit Court of Monongalia County is affirmed.
Affirmed.
NOTES
[1] West Virginia Code, 11-13-1 et seq. [1989] sets forth the business and occupation tax structure. This part of the W.Va.Code has undergone many revisions since its original enactment in 1915. In its most comprehensive form the statute listed the following categories of businesses upon which the State could impose its B & O tax: production of coal and other natural resources, W.Va.Code, 11-13-2a; manufactured or compounded products, W.Va.Code, 11-13-2b; business of selling tangible property, W.Va.Code, 11-13-2c; public service or utility business, W.Va. Code, 11-13-2d; business of contracting, W.Va. Code, 11-13-2e; business of operating amusements, W.Va.Code, 11-13-2g; service business or calling not otherwise specifically taxed, W.Va. Code, 11-13-2h; business of furnishing property for hire, W.Va.Code, 11-13-2i; small loan business, W.Va.Code, 11-13-2j; banking and other financial businesses, W.Va.Code, 11-13-2k; an additional surtax on coal production, W.Va.Code, 11-13-2l; generation or production of electric power, W.Va.Code, 11-13-2m. The preceding citations are to the W.Va.Code 1983 Replacement Volume and the 1986 Cumulative Supplement.

In 1985 the legislature began phasing out the State B & O tax by deleting provisions for the levy and collection of B & O taxes on most businesses, including appellee's, effective 1 July 1987. See W.Va.Code, 11-13-2 [1985]. However, the legislature preserved the power of municipalities to levy and collect local B & O tax on "any business activity or occupation for which the state imposed its annual business and occupation or privilege tax ... prior to" 1 July 1987. This provision remains in effect today.
The State currently levies B & O taxes on public service or utility businesses, on businesses generating or producing electric power, and on the business of gas storage. See W.Va.Code, 11-13-2d [1989], W.Va.Code, 11-13-2e [1989]; W.Va.Code, 11-13-2m [1989]. West Virginia Code, 11-13-25 [1978] and 8-13-5 [1988] provide the authority for cities, towns, and villages to impose a business and occupation tax within the guidelines imposed by W.Va.Code, 11-13-2 [1989], now that the State of West Virginia no longer taxes businesses and occupations.
[2] Rule 56, WVRCP, states, in pertinent part:

(e) Form of affidavits; further testimony; defense required.Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
[3] An example of the information in the record supporting WVUMC's position is the deposition testimony of appellant's City Manager Dennis Poluga:

Q. "Are you aware of anything they're [WVUMC] doing that strikes you as being other than for a charitable, scientific or educational purpose?
A. "Not specifically"
Poluga Deposition, page 43.
[4] See John Evan Jones, M.D., Vice President of Health Sciences at West Virginia University, Dep. at 30-33 (10 May 1990); G. Robert Nugent, M.D.Dep. at 45-47 (27 November 1990); Michael J. Lewis, M.D., Dep. at 36-38 (18 June 1990); Robert D'Alessandri, M.D., Dean of West Virginia University Medical School, Dep. at 13-15 (10 May 1990). See also WVUMC's Response No. 14, City's Second Set of Interrogatories (21 August 1990); WVUMC Response No. 25, City's First Set of Interrogatories (22 March 1990).