584 S.E.2d 553

**Robert M. LOVELL, Plaintiff Below, Appellant,**

v.

**STATE FARM MUTUAL INSURANCE COMPANY and David Marsh, Defendants Below, Appellees.**

No. 31059.

Supreme Court of Appeals of West Virginia.

Submitted June 11, 2003.

Decided June 27, 2003.

George B. Morrone, III, Esq., Kenova, Amy M. Herrenkohl, Esq., Barboursville, for the Appellant.

Daniel L. Stickler, Esq., Erin Magee Condaras, Esq., Jackson & Kelly PLLC, Charleston, for the Appellees.

PER CURIAM.

Robert M. Lovell appeals an order granting summary judgment to the defendants below, State Farm Mutual Insurance Company and Mr. David Marsh, in an action asserting various claims arising from alleged actions by State Farm and Mr. Marsh to

prevent a particular witness from testifying in a bad faith action Mr. Lovell had filed against United States Fidelity and Guaranty Company. Because we find that Mr. Lovell has failed to meet his burden of demonstrating a genuine issue of material fact, we affirm the circuit court's disposition of this action.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On April 14, 1992, the home of Robert M. Lovell (hereinafter Mr. Lovell), plaintiff below and appellant herein, was destroyed by fire. The home was insured under a policy issued by United States Fidelity and Guaranty Company (hereinafter "USF & G"). After the fire, USF & G delayed paying Mr. Lovell's claim while it investigated the possibility that the fire was caused by arson.[1] Shortly after the fire, Mr. Lovell received a visit from a friend, Leonard B. Hayes (hereinafter "Mr. Hayes"), who was at the time employed by State Farm Mutual Insurance Company in St. Louis, Missouri.[2] He held the position of superintendent of the special investigative unit, which handled automobile and fire claims when there was suspicion of fraud by the insured. While Mr. Hayes was not an expert in determining the cause and origin of a fire, he did have significant experience in

this area and agreed to look at the fire scene. After examining the scene, Mr. Hayes stated that he saw numerous indicators that the fire was not caused by arson. He advised Mr. Lovell to hire an independent investigator to confirm that there was no arson.[3]

Thereafter, in November 1992, Mr. Lovell filed a lawsuit against USF & G[4] in the Circuit Court of Kanawha County claiming bad faith.[5] USF & G was represented in the action by James D. McQueen, Jr., of McQueen and Brown, L.C. Mr. Hayes agreed to testify in the bad faith lawsuit as an unpaid expert witness for Mr. Lovell. Mr. Hayes chose not to inform anyone at State Farm of his participation in Mr. Lovell's lawsuit.[6]

After receiving a disclosure stating that Mr. Hayes was expected to provide testimony on behalf of Mr. Lovell, Mr. McQueen contacted Mr. David Marsh, Divisional Claim Superintendent for State Farm, and informed Mr. Marsh of Mr. Hayes' planned testimony. Mr. Marsh notified State Farm that Mr. Hayes had been identified as an expert witness in the bad faith action against USF & G. Thereafter, on November 16, 1994, Mr. Hayes received a visit from his direct supervisor, Divisional Claim Superintendent Mr. Eddie Sermons, and Mr. Sermons' supervisor, Mr. Jerry Melton. Messrs. Sermons and Melton discussed Mr. Lovell's lawsuit with Mr. Hayes, and then advised him to

---

1. Mr. Lovell had a large sum of money hidden in the walls of his home at the time of the fire. Mr. Lovell's efforts to remove and hide the cash during the fire attracted the attention of the authorities and prompted the arson investigation.

2. During the period from 1980 to 1986, Mr. Hayes was employed by State Farm as a superintendent supervising fire loss claims in Southern West Virginia. Mr. Lovell and Mr. Hayes became acquainted when, sometime during his employment in West Virginia, Mr. Hayes stayed at a motel owned by Mr. Lovell.

3. Mr. Hayes ultimately recommended Richard D. Casto of Casto Investigations to conduct an independent investigation into the cause of the fire. Mr. Lovell hired Mr. Casto, and Mr. Casto apparently agreed with the conclusion that the fire was not caused by arson.

4. Following the filing of Mr. Lovell's suit against USF & G, USF & G made a payment to Mr. Lovell pursuant to his coverage for structural

loss, loss of the contents of his home, and living expenses he incurred as a result of the fire.

5. This suit was denominated Civil Action No. 92–C–7356.

6. A summary of the testimony Mr. Lovell's attorneys expected to elicit from Mr. Hayes indicated that Mr. Hayes would testify that USF & G's handling of Mr. Lovell's fire loss claim "did not meet the recognized standards of the insurance industry regarding the investigation, adjustment, handling and payment of residential fire loss claims." Testimony from two other experts on behalf of Mr. Lovell was also anticipated. Mr. James F. Gerrity was expected to provide testimony similar to that of Mr. Hayes regarding USF & G's alleged failure to "handle and adjust [Mr. Lovell's] insurance in compliance with adjusting standards of the insurance industry," and Mr. Richard Casto was expected to testify that the fire was "accidental, and *not* of incendiary origin."

refrain from any further action in the case pending resolution of issues causing concern to State Farm. Mr. Hayes has claimed that he was advised that his employment with State Farm would be terminated if he participated further in Mr. Lovell's lawsuit. Consequently, he notified one of Mr. Lovell's lawyers that he would be unable to give a scheduled deposition or participate further in the action. On December 1, 1994, Mr. Hayes was notified by State Farm that he was being demoted to a claims specialist position and that his salary would be reduced incrementally over a five-year period. State Farm justified its action on the ground that Mr. Hayes had violated State Farm's conflict of interest policies and had demonstrated poor judgment when he became involved in the Lovell suit without informing his State Farm supervisors and seeking their advice.[7]

Thereafter, by correspondence dated March 22, 1995, Mr. Hayes' counsel advised State Farm that Mr. McQueen was planning to subpoena Mr. Hayes in connection with Mr. Lovell's bad faith case. Mr. Hayes' counsel inquired whether State Farm would take any adverse action if Mr. Hayes were to testify. On April 4, 1995, State Farm responded through counsel stating:

> State Farm does not plan to take employment action for the sole reason your client responds to a subpoena and testifies as a witness in the *Lovell* case. Also, no one in State Farm management has told Len he may not testify or that adverse employment action may be taken against him if he does testify in that case. Your client, as a State Farm employee, is expected to observe all conditions of employment, such as those for requesting and taking time off, in connection with this or any other activity he engages in.
>
> . . . .

Rights Reserved. State Farm does reserve the right to take any and all legal steps necessary to properly protect its confidential trade secret-proprietary information; your client did not seek nor does he currently have State Farm's permission to disclose any of this.

State Farm subsequently sought and obtained a protective order in connection with Mr. Lovell's bad faith action. The order was entered after a February 29, 1996, hearing on State Farm's motion for a protective order. The protective order barred further dissemination of any confidential and proprietary information Mr. Hayes might disclose during his expert testimony on claims processing.

On November 1, 1996, Mr. Lovell filed a second lawsuit, the instant case, in the Circuit Court of Kanawha County. This suit alleged causes of action against six defendants: State Farm, Mr. David Marsh, USF & G, Tim Linsky,[8] Mr. McQueen, and McQueen & Brown, L.C. More than a year after State Farm obtained a protective order with respect to Mr. Hayes' testimony in Mr. Lovell's bad faith action against USF & G, Mr. Lovell, in or about July 1997, settled his disputes with USF & G, Mr. Linsky, Mr. McQueen, and McQueen & Brown, L.C. In connection with this settlement, Mr. Lovell dismissed these parties as defendants in both his bad faith action and the lawsuit that is herein appealed.

State Farm and Mr. Marsh, the two defendants remaining in the instant lawsuit, filed a motion for summary judgment on November 30, 2001. By order entered on February 4, 2002, the circuit court granted summary judgment and dismissed Mr. Lovell's complaint. Mr. Lovell's complaint asserted five causes of action against State Farm and Mr. Marsh (hereinafter collectively referred to as

---

7. On January 17, 1995, Mr. Hayes filed suit in the Circuit Court of Kanawha County against State Farm, Mr. Marsh, Mr. McQueen, and Mr. McQueen's law firm, McQueen & Brown, L.C. The case was designated as Civil Action No. 95–C–160. According to the circuit court's order granting summary judgment in the instant case, [a]ll of the claims asserted [in Mr. Hayes' lawsuit] against McQueen and his law firm were dismissed by the Honorable Judge Irene Ber-

ger. Most of the claims asserted by Hayes against State Farm and Marsh were likewise dismissed. In February 2001, Hayes settled the outstanding claims of [his] wrongful demotion and outrageous conduct action with State Farm and Marsh.

8. According to Mr. Lovell's complaint in the case underlying this appeal, Tim Linsky is employed as an adjuster for USF & G.

"State Farm"); three of the counts of the complaint were predicated on an alleged violation of W. Va.Code § 61–5–27 (1923) (Repl.Vol.1992).[9] The remaining two counts asserted claims for intentional infliction of emotional distress and outrage.[10]

In its order granting summary judgment, the circuit court concluded that the version of W. Va.Code § 61–5–27 in effect at the time relevant to this lawsuit failed to provide for a civil remedy. The circuit court further noted that the statute did not provide for a civil remedy until 1999,[11] and there was no evidence that the Legislature intended a retroactive application of the 1999 statute. In addition, the circuit court explained that basing a claim of negligence upon a violation of W. Va.Code § 61–5–27 would require Mr. Lovell to demonstrate that the violation was the proximate cause of any injury he suffered. Since the circuit court had concluded that Mr. Hayes was able to testify, it found there was no injury and the question of proximate cause did not arise. With respect to Mr. Lovell's claim of outrage, the circuit court additionally concluded that Mr. Lovell lacked standing as the conduct alleged to be outrageous was directed at Mr. Hayes, and that Mr. Lovell did not meet the requirements for a third-party claim of outrage.

It is from the February 4, 2002, order of the Circuit Court of Kanawha County granting summary judgment to State Farm that Mr. Lovell now appeals.

**9.** At the time the acts complained of in Mr. Lovell's lawsuit occurred, the 1923 version of W. Va.Code § 61–5–27 was in effect. The 1923 version read as follows:

If any person by threats, force, or otherwise, intimidate or impede, or attempt to intimidate or impede, any judge, justice of the peace [magistrate], juror, witness, arbitrator, umpire, or an officer or member of any court in the discharge of his duty as such, or by any means obstruct or impede, or attempt to obstruct or impede, the administration of justice in any court, he shall be guilty of a misdemeanor, and, upon conviction thereof, unless otherwise provided by law, he shall be fined not less than twenty-five nor more than two hundred dollars, and be imprisoned in the county jail not exceeding six months.
W. Va.Code § 61–5–27 (1923) (Repl.Vol.1992).

**10.** The circuit court correctly determined that the final two counts of Mr. Lovell's complaint asserted the same claim. *See Travis v. Alcon*

## II.

## STANDARD OF REVIEW

■ The standard for our review of an order granting summary judgment is well established. " 'A circuit court's entry of summary judgment is reviewed *de novo*.' Syllabus point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 3, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). In conducting our *de novo* review, we apply the same principles for summary judgment as are applied by the circuit court. In this regard, we are mindful that

[s]ummary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). In other words, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

*American States Ins. Co. v. Tanner*, 211 W.Va. 160, 164, 563 S.E.2d 825, 829 (2002). With these standards as our guide, we now address the errors asserted on appeal.

*Labs., Inc.*, 202 W.Va. 369, 374, 504 S.E.2d 419, 424 (1998) ("Intentional or reckless infliction of emotional distress, also called the 'tort of outrage,' is recognized in West Virginia as a separate cause of action.").

**11.** Pursuant to W. Va.Code § 61–5–27(f) (1999) (Repl.Vol.2000),

[a] person who violates this section is liable in a civil action to any person harmed by the violation for injury or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs and other expenses incurred as a result of prosecuting a civil action commenced under this subsection, which is not the exclusive remedy of a person who suffers injury or loss to person or property as a result of a violation of this section.

## III.

## DISCUSSION

Mr. Lovell has asserted two arguments on appeal. First, he contends that the circuit court erred in concluding that West Virginia law does not recognize a civil cause of action for damages arising from a violation of the version of W. Va.Code § 61–5–27 that was in effect at the time relevant to his suit. In his second argument, he essentially maintains that the circuit court erred by concluding that his claim of intentional infliction of emotional distress was a third-party claim based upon acts directed at Mr. Hayes. Mr. Lovell asserts that State Farm's allegedly outrageous actions were, at least in part, directed at him.

After a thorough review of the briefs filed by the parties to this action, and the record submitted on appeal, we conclude that it is not necessary for us to reach the merits of the aforementioned assignments of error. In its order granting summary judgment, the circuit court plainly concluded that, even if it recognized a civil cause of action for a violation of the relevant version of W. Va.Code § 61–5–27 and/or Mr. Lovell had standing to assert his outrage claim, State Farm was nevertheless entitled to summary judgment as Mr. Lovell could not establish that State Farm's alleged actions proximately caused his asserted damages. We agree.

■ All of the claims asserted by Mr. Lovell against State Farm are predicated upon the fact that State Farm acted to prevent Mr. Hayes from testifying on behalf of Mr. Lovell in connection with Mr. Lovell's lawsuit alleging bad faith against USF & G. In explaining his damages in his brief to this Court, Mr. Lovell states that with "no hope that Mr. Hayes would appear and testify as originally expected, [Mr. Lovell] reluctantly settled his case for less than its value." Thus, a critical element of Mr. Lovell's claims is Mr. Hayes' unavailability to testify.

State Farm has established, however, that Mr. Hayes was not prevented from testifying in Mr. Lovell's bad faith lawsuit. State Farm presented the circuit court with evidence consisting of a letter expressly stating that State Farm did not plan to take employ-

ment action against Mr. Hayes for responding to a subpoena and testifying as a witness in Mr. Lovell's case. In addition, State Farm demonstrated that it had obtained a protective order with respect to the trade secrets it feared would be revealed in Mr. Hayes' testimony in Mr. Lovell's bad faith action. The circuit court expressly identified this evidence as its basis for granting summary judgment to State Farm:

It is clear that Lovell cannot establish a factual predicate for this claim. Lovell asserts that State Farm prevented Hayes from testifying as an expert on Lovell's behalf in the bad faith action. State Farm may have initially objected to Hayes's plans to testify for his friend. Nonetheless, in April 1995, State Farm informed Hayes in writing that he could testify in the bad faith case. It was State Farm that obtained a protective order so that any confidential and proprietary information disclosed in his testimony would be protected from dissemination outside of the underlying bad faith lawsuit. Thus, State Farm actually paved the way for Hayes to testify.

Furthermore, even if Lovell could assert a claim for negligence for the violation of a statute, such violation would have to be the proximate cause of any injury to Lovell before it could be actionable.... As noted, Hayes could have testified in Lovell's bad faith case. Therefore, there was no injury and the question of proximate cause does not even arise.

(Citation omitted). With respect to Mr. Lovell's outrage claim, the circuit court stated: "[b]ecause causation is also an element of the tort of outrage, this claim fails for the same reasons Lovell's negligence and tortious interference causes of action fail." (Citation omitted).

■ Once State Farm presented the aforementioned evidence to the circuit court, the burden shifted to Mr. Lovell to demonstrate the existence of a genuine question of material fact.

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that

there is no genuine issue of a material fact, the burden of production shifts to the non-moving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. pt. 3, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). *See also City of Morgantown v. West Virginia Univ. Med. Corp.*, 193 W.Va. 614, 620, 457 S.E.2d 637, 643 (1995) ("[W]hen a motion for summary judgment 'is properly documented with such clarity as to leave no room for controversy, the nonmoving party must take the initiative and by affirmative evidence demonstrate that a genuine issue of fact exists. Otherwise, Rule 56 empowers the trial court to grant the motion.'" (quoting *Painter v. Peavy*, 192 W.Va. 189, 192 n. 5, 451 S.E.2d 755, 758 n. 5 (1994) (internal citation omitted))). This principal has been summarized thusly:

The party opposing summary judgment must satisfy the burden of proof by offering more than a mere scintilla of evidence and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. The nonmoving party must offer some concrete evidence from which a reasonable finder of fact could return a verdict in his/her favor or other significant probative evidence tending to support his/her case.

Franklin D. Cleckley et al., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 56(c)[b], at 935 (2002) (footnote omitted).

In response to the evidence produced by State Farm, Mr. Lovell has failed to come forward with any evidence demonstrating that a genuine question of material fact exists as to whether Mr. Hayes was prevented from testifying by State Farm. In the circuit court, Mr. Lovell did not submit any deposition testimony, discovery responses, or affidavits to support his contention that Mr. Hayes was actually prevented from testifying. Before this Court, Mr. Lovell has simi-

larly failed to direct us to any evidence in the record demonstrating the existence of a factual question with respect to whether Mr. Hayes was prevented from testifying. To meet his burden, Mr. Lovell merely directs this Court to a proposed order denying summary judgment, which he submitted to the circuit court and which the circuit court rejected, and to arguments tendered by counsel during the proceedings below. This is insufficient to resist summary judgment.

The evidence illustrating the factual controversy cannot be conjectural or problematic. It must have substance in the sense that it lends differing versions of the truth which a factfinder must resolve. The evidence must contradict the showing of the moving party by pointing to specific facts demonstrating that, indeed, there is a trialworthy issue.

Cleckley et al., *supra*, § 56(c)[b], at 936. *See also City of Morgantown v. West Virginia Univ. Med. Corp.*, 193 W.Va. at 620, 457 S.E.2d at 643 ("'Summary judgment cannot be defeated on the basis of factual assertions contained in the brief of the party opposing a motion for such judgment.'" (quoting Syl. pt. 6, *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 346 S.E.2d 788 (1986) (internal quotations and citation omitted))).

It is well established that,

[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. Here, State Farm produced evidence from which a trier of fact could conclude that Mr. Hayes was available to testify in Mr. Lovell's bad faith action. In response, Mr. Lovell has failed to demonstrate, through affirmative evidence, the existence of a genuine question of material fact regarding Mr. Hayes' availability to testify on his behalf. Consequently, we find that the circuit court did not err in granting summary judgment to State Farm.

## IV.

## CONCLUSION

For the reasons explained above, the February 4, 2002, order of the Circuit Court of Kanawha County granting summary judgment to State Farm is affirmed.

Affirmed.